# HAYS et al. VS HALL et al.

*As to the specific execution of contracts for the sale of lands, in equity, in favor of the representative of an estate.*

1. Where, on a contract for the sale and purchase of an estate, either party has performed a valuable part of his agreement, and is in no default for performance of the residue,—he is entitled in equity to a specific execution of the other part of the contract.

2. Equity will decree a specific execution of a contract, in favor of one performing a valuable part of his agreement, and who is in no default,—wherever it is impossible to place him in *statu quo.*

3. Time may be of the essence of a contract, in equity, when required by the terms of the contract; and, *it seems,* also, in cases where one party seeking relief, is in default, without excuse, or acquiescence or waiver, by the other party.

4. Where the specific execution of an agreement respecting lands, will be decreed in equity between the contracting parties,—it will also be decreed between all claiming under them in priority of estate, or representation, or title—no controlling equities interposing.

5. In a case where A made an agreement for the sale of lands, with B and C, and took the notes of the latter, with D and E as sureties; and A gave his bond, conditioned to make titles to the lands, when the notes were paid: and immediately afterwards B and C assigned the bond to D and E, to indemnify them, for becoming sureties: and subsequently, A dying, and D and E being in possession of the lands, and D, exercising a control over them, paid the last note due, after suit, and took from A's representative and heirs, a bond, conditioned for the executing of a title to D, within a specified time, and on the expiration of this time, brought his action upon the

bond;—On a bill filed by A's representative and heirs, it was held—

First—That the administrator, under the facts, was entitled to a specific execution of the contract of his intestate, and that the heirs of A might well become parties to the suit, as complainants.

Secondly---That the bond executed by the representative and the heirs, was without consideration and void.

Thirdly—That the complainants, in applying to Chancery for a specific execution of the agreement of their intestate, had a right also to make the matter of their bond, a part of the case: and that in decreeing a specific execution, Chancery, could decree also a cancellation of the bond.

Fourthly---That it was a just excuse for the delay of the administrator, to file his bill sooner than he did, that the party holding the bond of his intestate, might have applied to the Orphans' Court, and there have perfected a title.

Fifthly—That the assignment of the bond of the intestate, by the vendees, to their sureties, created an equitable mortgage of the lands, in favor of the latter, which might be foreclosed.

Sixthly—That in a case of this character, it was essential to make all the heirs of the vendor, and of the assignee of the vendees, parties to the cause before a decree could be rendered; but that all the amendments for this purpose, could be made on remanding the case to the Court below, on a mandate from this Court.

In error, to a decree of the Circuit Court of Lowndes County, exercising Chancery jurisdiction.

The original bill in this case, was filed by Richard H. Hays, Patrick W. Hays, and Robert S. Hatcher. It shewed, that in the year one thousand eight hundred and twenty-six, one James Hays agreed to sell and convey to John Edmondson and Samuel Goodall, sundry tracts of land, for the price of two thousand dollars, to have been paid in Jan-

uary following: that the said Edmondson and Good-
all gave a note or notes for the said sum of money,
with Boling Hall, and Henry Lucas, as sureties, and
took from James Hays a bond, in the penalty of
five thousand dollars, conditioned that Edmondson
and Goodall should receive titles for the land pur-
chased by them when the said payment should be
made. The bill further shewed, that the said notes
were afterwards paid by the said Hall, or by Hall
and Lucas, and prior to which said James Hays
died intestate—administration on his estate being
granted to Richard H. Hays. That during the life
time of James Hays, and before the payment of said
notes or either of them, Edmondson and Goodall, to
indemnify the said sureties, assigned to them the bond
of Hays the intestate, and that afterwards, to wit, in
the year one thousand eight hundred and twenty-
seven, the said Hall and Lucas were put in posses-
sion of the lands: and that said Hall had, under that
possession, collected a large sum of money as rents.
That subsequently Hall, or Lucas and Hall, sold the
land to one Betts for one thousand six hundred and
twenty dollars, on a credit of one, two and three
years, taking Betts's notes, and agreeing to make
him titles when the purchase money should be paid;
and under which sale, Betts obtained possession—
That afterwards, before the purchase money became
due from Betts, Hall rescinded the contract, but that
Betts remained in possession. That a large portion
of said lands was cleared, and had been cultivated,
and that commodious buildings had been erected.
The bill then charged, that after the death of James
Hays, and before the last payment was made on ac-

count of said lands, the same being much needed for the purposes of the estate, the said Hall induced the complainants to execute to him a bond in the penal sum of five thousand dollars, conditioned that a title should be made to Hall, of the said lands, within four months after the date thereof; the said term of four months being inserted, as the probable period necessary to perfect a title to Hall through the Orphans' Court—the said Hall agreeing to that time, and protesting that no advantage should be taken on account of the time, and still retaining the bond of the intestate, James Hays. That Richard H. Hays, one of the complainants and administrator of the estate, on making an effort. subsequently, to comply with the condition of the said bond, in obtaining the title from the Orphans' Court, was instructed by the Court, that his application could not be considered— the law requiring the same to be made by Hall,—of all which Hall was informed, and a request urged upon him to apply accordingly; which Hall promised to do, at a convenient time. That, violating his promise, to make the aforesaid application to the Orphans' Court, Hall delayed and refused to do so, until after the four months had expired; and, notwithstanding that complainants were the sole heirs of the said James Hays, and had proposed to Hall, a deed or deeds for the said lands, he had refused to receive any such, and had actually commenced suit upon the bond executed to him, by complainants; which was then pending.

The bill, after charging a want of consideration, in the execution of the bond, from complainants to Hall—and many other immaterial matters, prayed

4P.                48

relief, in enforcing the execution of the contract, and an injunction of the proceedings at law.

The answer of Hall admitted the sale of the lands, as charged in the bill; stated that the full amount of the notes had been paid by respondent and Lucas. That on the last note respondent was sued in the name of one Love, as bearer; that being about to apply for an injunction to stay the recovery on this note, until he could obtain titles—Edmondson and Goodall being entirely insolvent—an interview was effected with complainants; and on respondent paying the amount of said note, then in suit, complainants executed their bond, as set out in the bill.

The respondent denied that time was not material, but averred it was so considered; and that he advised complainants to take ample time to effect the object. He also denied the receipt of any rents, as charged, or that he had been in the possession of the said lands : admitted that Betts did apply to him for a sale of the lands; but on account of the defect in the title nothing was done.—He further admitted the possession of the bond of James Hays, but denied any knowledge of the proceedings to effect a title, instituted by complainants, before the County Court, &c.

Lucas also answered the bill, but stated no facts materially varying from those stated in the answer of Hall.

The proofs taken in the cause, among other immaterial matters, established, that Hall had, upon many occasions, exercised a control over the lands—having rented them to some persons, and contracted for their sale to others. And also, that the lands

had deteriorated in value, by cultivation and waste.

The Chancellor dissolved the injunction, and dismissed the bill.

The case was argued by *Thorington*, for the plaintiff in error; and by *Clarke*, contra.

HOPKINS, C. J.—The bill, in this case, was filed by Richard H. Hays, Patrick W. Hays, Robert S. Hatcher, and Nancy, his wife. Before the cause was heard in the Circuit Court of Lowndes County, Patrick W. Hays died, and his executrix, Martha B. Hays, was made a party to the bill, as one of the complainants.

The material allegations of the bill, which we deem it necessary to consider, are, that James Hays, the father of the complainants, Richard H., Patrick W. and Nancy Hatcher, sold, in November, eighteen hundred and twenty-six, the lands that are described in the bill, to Edmondson and Goodall, two of the defendants, at the price of two thousand dollars.— That the purchase money was to be paid in two instalments, and for which the purchasers gave two notes to the vendor, with Hall and Lucas, who were also defendants to the bill, as their sureties.— One note was payable, the first of January, eighteen hundred and twenty-seven, and the other the first of January, eighteen hundred and twenty-eight. That the vendor made his bond to the vendees, in the penal sum of five thousand dollars, conditioned to be void, if he should, upon the payment, of the two notes, or soon after, convey a good and legal title, in fee simple, to the lands, to the vendees. That the

bond was, upon the day of its date, assigned by the
vendees, to Hall and Lucas, to indemnify them
against the liability they had incurred, as sureties
for the purchase money.

That, in eighteen hundred and twenty-seven, the
vendees put the assignees, or Hall, one of them, into
the possession of the premises, for the benefit of the
assignees, and that Hall had received a large sum of
money, as the rents of the land. That the lands,
since the sale, have been greatly injured by cultiva-
tion, and diminished in value.

That, in September, eighteen hundred and twen-
ty-eight, and before the payment of the note that
was last payable, the vendor died intestate. That
administration upon his estate was granted to
the complainant, Richard H.; and his heirs at law
were his three children, who are complainants, and
the children of a daughter, Mary Merriweather, who
died in her father's life-time. Her husband, who
survived her, and her children, together with Al-
len Love, the husband of Martha G., who is one of
the last mentioned children, are defendants to the
bill.

They allege, that before the last instalment of the
purchase money was paid to the administrator, Rich-
ard H., he and the complainants, Patrick W. Hays
and Robert S. Hatcher, made, on the twenty-first
of April, eighteen hundred and twenty-nine, their
bond to the defendant, Hall, in the penal sum of five
thousand dollars, conditioned to be void, if they
should convey a good title in fee simple to the same
lands, within four months from the date of their bond.
That soon after the breach of the condition of their

bond, Hall put it in suit, claiming to recover upon it the sum, with interest, which had been paid upon the sale of James Hays.

They allege also, that Hall had, at the time they executed their bond, and still has the bond of James Hays; and that their own bond was made without consideration, as the former one is a valid and subsisting obligation against the representatives of James Hays, upon which the persons who are entitled to the benefit of it, have a summary remedy to obtain a specific performance of the agreement to convey the lands in an Orphans' Court.

As many of the allegations are not admitted in the answer, and were not proved upon the hearing of the cause, they are omitted in this statement.

Hall and Lucas, both admit the agreement for the sale of the lands—the execution of the notes for the purchase money—of James Hays's bond, and the assignment of the latter to them, as stated in the bill. Hall admits also, that he still has the bond of James Hays; but denies that he ever had the possession of the lands, or exercised any control, or act of ownership over them, or had ever put a tenant in possession, or received any sum of money, as rent of the premises. He states, that upon the note which first matured, a judgment was obtained against Lucas, which was satisfied by Lucas and himself jointly.— That suit was instituted on the other against him. That he employed counsel who had prepared a bill upon which he intended to apply for an injunction to stay the proceedings at law, until he could obtain a conveyance of the title to the lands, when it was agreed between himself and Richard H. and

Patrick W. Hays and Robert S. Hatcher, that they should make the bond which they executed in consideration of the payment by him, of the sum due on the note, then in suit.

It was proved on the hearing in the Circuit Court, by the deposition of W. Oliver, that he was authorised, in eighteen hundred and twenty-seven, by a letter of Hall, that had been lost or mislaid, to sell or rent the premises, and that he did rent them to John Green and W. Pearce.

By the deposition of John Green, it was proved that he, one Autry and W. Pearce rented the lands one year of W. Oliver, and that he paid the rent due from himself to Samuel W. Oliver.

It appears from the proofs, that Isaac Betts, one of the defendants, took possession of the premises, or a part of them in the autumn of eighteen hundred and twenty-eight, by the authority of Hall; that he had the possession as late as January, eighteen hundred and thirty; and that one Walker also entered upon the possession of a part of the lands, on a contract with Betts.

A letter written by Hall, dated the 2nd of October, eighteen hundred and twenty-eight, and addressed to Samuel W. Oliver, is annexed to the answer of Hall, as an exhibit. In the letter Hall informed Oliver, that Betts was authorised to take immediate possession of the premises, unless some of Hall's friends had previously rented them to some other person.

We conclude from the testimony, the possession of the lands was given to the purchasers, and that they have been occupied since the sale by persons

who entered upon them as tenants of Hall, or by the permission of his tenants. It appears also from the proofs that the value of the premises has been reduced greatly since the sale, and no other cause of this effect is shown by the testimony, than the failure of the persons who have occupied the premises, to keep them in repair. Neither instalment of the purchase money was paid punctually; each was paid by the sureties of the vendees after a suit had been instituted, to compel payment. The vendor died eight or nine months after the last note was due. If the failure to pay the first instalment punctually, gave him a right to rescind the agreement, he waived the right by the acceptance of the money, and he acquiesced in the neglect to discharge the other note by asserting no claim to the possession of the lands. He was not bound to convey the title before the whole purchase money was paid, and he died in no default, because no right existed during his life to demand a conveyance of him. As he had acquiesced in the delay of the vendees to pay the purchase money, his personal representatives had a right to do so also. That he did so is proved by the fact that he afterwards receieved the balance of the purchase money. At no time before the whole purchase money was paid, had the purchasers any ground upon which they could have been permitted to avoid the specific execution of the agreement. The effect of their own default was against them, and in favor of the vendor and his representatives; and all benefit from that default has been waived by those who might have claimed it. If the last instalment had not been paid, a bill might

have been filed by the personal representative of the vendor to compel a specific performance, and upon such a bill in such a case, the decree sought, ought to be made. The vendor performed, during his life, a valuable part of the contract, by parting with the possession of the lands, and had a right before his death, as the last note became due prior to that event, to a specific execution of the agreement.

The principle is well settled, that where either party has performed a valuable part of his contract for the sale and purchase of an estate, and is in no default for not performing the residue, he shall have a specific execution of the other part *2 Story's of his contract.* This right the vendor did no-
Eq. 82. thing, after he acquired it, to impair, and after his death it belonged to his personal representative, if he chose to claim it. The possession from which the vendor parted was never regained or claimed, either by himself, whilst he lived, or by his representatives after his death. The value of the lands has been diminished since the sale of them, by the want of proper care in those from whom it was required. The impossibility of placing a party in *statu quo*, who has performed a valuable part of his agreement, and was in no default for not performing the residue is another † 2 Ib. 83. ground for the specific execution of the agreement.†

If the sale could not be executed, the heirs of the vendor would be injured by the consequences of duties omitted, or of acts which were not the vendor's or their own. Time may be of the essence of an agreement in a Court of Equity. It is always essential, when it is made so by the terms of a contract; and it is considered so by some able Chancellors, in

every case, in which the party who seeks relief has been in default himself, without any just excuse, or any acquiescence or subsequent waiver, by the other party.*

But for the acquiescence and acts of waiver, on the part of the vendor and his personal representative, the vendee never would have acquired a right to the specific execution of the agreement, in this case.

> * 2 Story's Eq. 85, 86, note 1—1 Young & Collyer, 415—1 Johns. Ch. Rep. 370.

It is a general rule, that where the specific execution of an agreement, respecting lands, will be decreed between the parties, it will be decreed between all parties claiming under them in privity of estate, or representation, or title, unless other controlling equities are interposed. The rule is thus stated in 2d Story's Eq. 96, 97.

The purchase money is treated, in equity, as the personal property of the vendor, and as such, goes to his personal representatives.† If it be unpaid at the vendor's death, the personal representative has a right to receive it. If the payment of the money and the conveyance of the estate, are according to the agreement, to be made at the same time, the personal representative would have a right, in a case where the time agreed upon for performance, was not of the essence of the contract, if in no other case, to a specific execution of the agreement, if he applied to a Court of Equity for the purpose, in a reasonable time after the day for performance.

> † 2 Stor. Eq. 98, 99.

The purchase money having been made the personal property of the vendor, by his own contract, his personal representative has a right to all the remedies to recover or retain it, to which the vendor

4P                    4ℐ

would be, if he were living. When the representative goes into equity, he must make the heirs of the vendor, as well as the vendee, and all other persons who have an interest in the matter, parties to his bill. The heirs may, if they choose, unite with him, as complainants — otherwise, they must be made defendants.

By the contract, in this case, no day was fixed for the conveyance of the title.—The vendor's bond required him to convey the estate, soon after the payment of all the purchase money. If the purchasers and their sureties had made no default, there is no reason to suppose the title would not have been conveyed by the vendor in his life-time according to his contract. Their defaults were acquiesced in, and waived by the vendor himself, and his personal representative.

It is a just excuse, for the omission of the administrator, in this case, to file his bill for the execution of the contract sooner than he did, that the purchasers could have obtained a specific execution of the agreement in the Orphans' Court of the proper County, by filing a petition against the administrator upon the bond of his intestate, and satisfying the Court that it was fairly made. This statutory remedy is more summary and less expensive, than the proceeding in Equity, in which the same object is attained.*

*Aik. Dig. 95.

The vendees, and those who claim under them, can not complain of the administrator's delay in taking steps to enable him to have the title conveyed to them, when the consequence of any course he could have pursued, would have been longer delay than would have been the result of the prosecution by the

vendees, of the remedy to which they only were en-
titled in an Orphans' Court.* *1 Johns. Ch.R.379. 2Pr. Wms. 66.

The next question is, whether the bond which
three of the plaintiffs in error made to Hall, is valid.
We think there is no consideration to support the
bond. The payment by him of the last instalment
of the purchase money was what he was bound to
do. Nothing that appears in the record would have
been a good defence to the action at law upon the
note, or have given him a right in Equity, to enjoin
a judgment upon it. As the vendor parted with the
possession of the premises, and the vendees bound
themselves to pay part, at least, of the purchase mo-
ney, before the time fixed for the conveyance of the
title, the promise to pay the whole of the purchase
money was independent of the obligation of the ven-
dor to convey, and the entire sum could have been
recovered at law, without any averment in the de-
claration, of the vendor's ability to convey the es-
tate. A plea in such a case, that the vendor had no
title on the day fixed for the conveyance, would be
no bar to the action, as this Court decided, in the
case of *Weaver vs Childress.*† †3 Stew'ts Rep. 363.

There was no just claim to an injunction, from a
Court of Equity; because the case shows the title
could have been obtained, on a proper application to
an Orphans' Court. That the complainants, who
made the bond to Hall might have defended the ac-
tion at law, upon it, does not deprive them, in this
case, of their claim to relief in Equity against their
bond.

The jurisdiction of the Court might perhaps be
maintained upon the principle, that it is against con-

science, for Hall to enforce the bond, and unjust to the obligors, that he should retain it. He might take a non-suit in the action now pending, and renew it again, hereafter, when the obligors could not prove that their bond was without consideration,— and we will not decide, that equity might not exercise jurisdiction upon the principle of *quia timet*, and decree the cancellation of the bond.*

As equity has jurisdiction to decree a specific execution of the contract of James Hays, deceased, in favor of his administrator, it was proper for the complainants in their bill for a specific performance, (for which object the bill, in this case, was filed,) to make the matter of the bond to Hall, a part of the case.

It is a settled rule, that if a Court of Equity have jurisdiction of a cause, for one purpose, it may exercise it generally.†

There ought, we think, to be a decree for the cancellation of the bond, and for a perpetual injunction of the suit at law upon it, as well as for a specific execution of the contract for the sale of the lands, into which James Hays entered, in his life-time.

The assignment by the vendees, of the vendor's bond to Hall and Lucas, created in favor of the latter persons, an equitable mortgage. If the purchase money which the sureties paid, did not belong to the vendees, and has not been repaid by the vendees, the sureties in this case, have a right to the estate, as mortgagees, upon a decree for the specific execution of the contract, in favor of the complainants‡

Such a mortgage they might foreclose as other mortgages may be foreclosed.

It does not appear that John G. Merriweather had

any interest which a decree in this case could affect, as his wife died before her father, James Hays.—Betts also appears to have no interest.

So much of the decree as dismissed the bill, as to the defendants, John G. Merriweather and Betts, is affirmed, at the costs of the plaintiffs in error. But the decree, in all other respects, is reversed, and the cause is remanded, for the purpose of having the principles of the opinion of this Court carried into effect.

This Court cannot now make such a decree as ought to be made, because the Circuit Court made its decree before all the necessary parties were before that Court. The heirs at Law of the complainant, Patrick W. Hays, ought to have been made parties, before the decree of the Circuit Court was made.

Hall has died since the cause was brought into this Court, and his executors have been made parties here; but it will be proper to make his heirs at law parties, before the case shall be heard again in the Circuit Court. All the amendments for these purposes may be made, after the case shall be again in that Court, upon a mandate from this.* <sup>*</sup>7Pet.Rep 130.

There ought also to be either an answer from the wife of Love, or a decree, *pro confesso*, against her.

The plaintiffs in error must be allowed the costs of this Court upon so much of the decree of the Circuit Court, as is reversed against the defendants, Goodall, Edmondson, Lucas, and the executors of Hall.

GOLDTHWAITE, J., not sitting in this case.