## Case No. 8,490.
### LONGWORTH v. TAYLOR.
[1 McLean, 395.] [1]

Circuit Court, D. Ohio. Dec. Term, 1838.

CONTRACTS—TIME—SAME JUSTICE CAN BE DONE—PARTY SEEKING EQUITY—NEGLIGENCE—MORTGAGOR AND MORTGAGEE—ASSIGNEES OF EQUITY.

1. Time may be made of the essence of the contract by the parties. And it is never to be wholly disregarded.

[Cited in Tufts v. Tufts. Case No. 14,233.]

[Cited in Rummington v. Kelley, 7 Ohio, 437.]

2. But in a case where the same justice can be done between the parties, and neither has sustained inconvenience by the delay, and the property has not changed in value, the court will not consider time as essential.

[Cited in Mason v. Wallace, Case No. 9,255.]

3. The party who asks equity, must do equity. He must show, at least, a reasonable diligence in performing or offering to perform his part of the contract.

[Cited in Tufts v. Tufts, Case No. 14,233.]

4. Where both parties have been grossly negligent, equity will leave them to their legal remedy.

[Cited in Cooper v. Brown, Case No. 3,191.]

5. A party who wishes to put an end to a contract, for negligence, must, himself, not be in default.

6. A vendor, having received a part of the purchase money, must return the money, and also the outstanding securities, especially if they are negotiable, for the purchase money.

7. A party has no right to annul a contract, when he is himself the cause of the failure by the other party.

8. The vendor agreed to make a deed in three months, one-third of the consideration being paid, and the other two-thirds to be paid annually—the vendee agreeing to execute a mortgage to secure that sum. But the vendor failed to make a deed, and brought an ejectment and recovered the possession of the lot. *Held* that the relation of mortgagor and mortgagee existed between the parties in equity.

[Cited in Smith v. Babcock. Case No. 13,009; Wright v. Shumway, Id. 18,093.]

[Cited in Love v. Watkins, 40 Cal. 571; Peake v. Young (S. C.) 18 S. E. 239.]

9. The assignees of an equity are necessary parties. They may assert their right, through their assignees, therefore they are interested, and may have grounds of equity which cannot be asserted by the assignor.

10. That the vendor may be harassed with another suit, is a sufficient ground to object, that the assignees are not parties.

[This was a bill in equity by Nicholas Longworth against James Taylor for a specific performance of a contract made for the sale of a lot of ground in the city of Cincinnati.]

Chase & Wilcox, for complainant.

Mr. Fox, for defendant.

OPINION OF THE COURT. This court delivered an opinion in this case at December term, 1829; but on account of a change in one of the members of the court, and a wish expressed by the counsel of the defendant, for a re-argument of the case, the court directed it to be re-argued. The controversy arises on a contract made the 5th of April, 1814, in which the plaintiff purchased from the defendant part of lot 81, in Cincinnati. at one hundred and twenty-five dollars per foot; one-third of the purchase money to be paid down, one-third in six, and the other in twelve months. The defendant to execute a deed of conveyance in three months, and the plaintiff agreed to give a mortgage on the premises to secure the balance of the purchase money. The purchase money amounted to about the sum of $7,406 25; one-third of which was paid at the execution of the contract, and possession was taken by the plaintiff. The deed was not executed by the defendant, and when the instalment became due, he agreed with the complainant to suspend the payments on his paying the rate of interest paid on Miami Bank stock, which was nine or ten per cent. This interest was paid up to about the close of the year 1819. The complainant caused to be built four houses for stores on the lot, which cost $4,464 83. In the year 1819 or the beginning of the year 1820, the plaintiff was informed that Chambers and wife had a claim on lot 81, which would be prosecuted, and that the counsel who had investigated it, were of the opinion that the claim was valid. The complainant was advised by counsel to withhold the payment of the balance of the purchase money until this claim should be settled. No interest being paid from the year 1819; the defendant, in September, 1822, commenced an action of ejectment and recovered possession of the premises in August 1824. After notice of the claim of Chambers and wife, the plaintiff states that he made various propositions for payment, varying the original conditions, none of which were finally accepted by the defendant; though, it seems the plaintiff supposed, that he had some grounds to expect, that a payment into the Branch Bank of the United States at Cincinnati, in discharge of a debt due to it by the defendant would be received; and he sold a part of the lot for payments, which would meet the requisitions of the bank. But the purchaser on account of the interfering claim, refused to complete his purchase and the contract was rescinded.

In the year 1825, the plaintiff filed his bill praying a specific execution of the contract. Some time in the following year, Lewis, the agent of the plaintiff called on the defendant, and requested a statement of the amount, which he informed the defendant, the plaintiff was ready to pay; but the defendant refused to converse on the subject, observing that he had possession of the lot, and did not wish to part with it. Some time in July, 1827, the same agent again called on the defendant with upwards of $7,000, principally in notes of the Bank of the United States, and tendered the amount to the defendant, and requested him to exhibit a statement of the amount due, he having kept the amount

---
[1] [Reported by Hon. John McLean, Circuit Justice.]

of payments; but he refused to give the statement or receive the money, and said that he relied on his legal rights. No objection was made to the kind of money tendered. Subsequent to this tender, a supplemental bill was filed setting forth the facts. The buildings on the lot rent for a considerable sum annually, which defendant contends indemnified the plaintiff, while he was in receipt of the same for the improvements made, and also for the sum paid on account of the purchase. Recently the plaintiff has filed another supplemental bill, in which he states that in the year 1815 he sold a part of the lot to one Joseph Canby, and bound himself to convey it to him in fee simple, on the performance of certain conditions. That afterwards, this agreement was assigned by Canby to one Thomas D. Carneal, a citizen of Ohio, which assignment was afterwards ratified by the plaintiff. That this right is still in Carneal, to whom he is bound to make a warranty deed, so soon as he shall obtain a title from Taylor. Two other sales of parts of lot 81, to other persons, which covered the residue of the lot, are also stated in this supplemental bill, but these contracts were afterwards rescinded.

. The question which arises out of these facts is, whether the plaintiff is entitled to a specific execution of the contract. On the part of the defendant's counsel it is insisted that the plaintiff has been so negligent in the performance of his part of the contract, as to forfeit all his right to a specific execution of it. And a great number of authorities are referred to as sustaining this position.

The leading case of Scott v. Fields, 7 Ohio, 90 (2d part), is relied on. In this case, a bill was brought for the specific execution of a contract for a tract of land which was to be paid for by instalments, and it was agreed that if the vendee should fail to make payment in all respects as specified, the payment then made should be forfeited, and that the agreement should be considered null and void. The instalments were not paid at the time stipulated, and the court held that time was of the essence of the contract, and dismissed the complainant's bill. In this opinion the court refer to a great number of reported cases, and controvert the rule as laid down by Lord Thurlow that "time is immaterial in contracts."

And the case of Rummington v. Israel, reported in the same volume (page 97), is also relied on. In this case, the plaintiff purchased of the defendant a lot of ground, and gave four several promissory notes, one of which was payable annually. The note first payable was not paid at maturity, and some days after the failure, the defendants stated to the plaintiff that they considered the contract forfeited or void, and tendered to him his notes, which he refused to receive, and they were deposited in the hands of a third person. In May, 1833, the plaintiff tendered to the defendants, the amount supposed to

be due on the first payment, and in June, 1835, he tendered the balance of the money due on the contract. The plaintiff, without the consent or knowledge of the defendants, entered upon the lot, and made some improvements on it. On this state of facts, the court dismissed the bill of the complainant, and held that he had been too negligent in the performance of his part of the contract, to call upon the defendants for a specific execution of it.

In the case of Benedict v. Lynch, 1 Johns. Ch. 370, the chancellor considers very much at large the influence that time should have on a contract. That case arose out of a contract for the purchase of land, payment for which was to be made by annual instalments. On full payment a deed was to be executed. And it was agreed if the plaintiff failed in the payments, or any of them, the contract should be void. The plaintiff took immediate possession of the land and made improvements on it. He failed to make the payments, and between three and four years after the first default, the contract seemed to have been abandoned by the plaintiff, and he agreed to do a certain amount of work on the premises, as tenant, within the year. The defendant then sold the land to another person, who consulted with the complainant before he made his purchase. The court dismissed the bill filed by the complainant for a specific performance. There can be no doubt that the parties may make time of the essence of the contract; and in no case is it to be considered as an immaterial circumstance.

Lord Thurlow in the case of Gregson v. Riddle, cited 7 Ves. 268, intimated, it would seem, that the parties could not make time of the essence of the contract; but there was no decision of this point in the case, and the remarks of his lordship may not have been accurately reported. It is the province of chancery to relieve against penalties and forfeitures, but it would be strange if this relief were extended against the positive stipulation and understanding of the parties to the contract. This would be, not to give effect to the contract, but to make a new one between the parties, contrary to the terms which they themselves had adopted. At law, time is always an essential part of a contract; but in chancery the court consider it in connection with the circumstances of the case. The rule at law is so inflexible as not to admit of any excuse, however strong, for a failure to perform the contract at the time fixed. But, it is otherwise in chancery. Not that chancery disregards time as immaterial, but, if the party can show that he has been prevented, by inevitable accident, or by any justifiable excuse from performing his part of the contract, at the time stipulated; and the other party has suffered no material injury by the delay, the court will not withhold its aid.

In the case of Lloyd v. Collett [4 Brown;

Ch. 469], Lord Loughborough well remarks, that it is a singular head of equity which arises out of one's own neglect. And he calls for a case to show where nothing has been done, by either party, that chancery has not held time as an essential part of the contract. In most cases the contract has been in part performed, and some hindrances or excuses are alleged, for the non-performance of it in full, and out of these circumstances the equity arises. It may be laid down as a rule established by adjudged cases, and stated in the elementary treatises on the subject; that where a party has failed to execute his part of the contract, without a sufficient excuse; and there has been no acquiescence in the delay by the other party, the court will never decree a specific execution of the contract. The party who asks a court to aid him must show reasonable diligence, in doing or attempting to do what he agreed to perform. In 1 Ves. Sr. 450, Lord Hardwicke says, it is the business of this court to relieve against lapse of time, in the performance of an agreement; and especially where the non-performance has not arisen by default of the party seeking to have a specific performance.

Nearly a century and a half ago, in the case of Hayes v. Coryll [2 Eq. Cas. Abr. 16], 5 Vin. Abr. 538, pl. 18, it was held that a person was not entitled to a specific performance, who had trifled or shown a backwardness in performing his part of the agreement. The facts and circumstances of cases are infinitely diversified. No two cases, perhaps, can be found exactly alike in every particular. Consequently, no general rule can apply with equal force to all cases. And here is a wide scope for the exercise of the judgment of the chancellor. Not that in the exercise of his discretion, he may substitute a new rule, but in applying the facts of the case to establish principles.

In the case of Hepburn v. Auld, 5 Cranch [9 U. S.] 262, the supreme court say, a vendor may compel a specific execution of a contract for the sale of lands, if he is able to give a good title at the time of the decree; although he had not a good title when, by the contract, he ought to have conveyed. And in the case of Pratt v. Law, 9 Cranch [13 U. S.] 456, they say, that time is material as to the specific performance of a contract, wherever, from the change of circumstances, a specific performance, such as would answer the ends of justice between the parties, has become impossible.

In the case of Brashier v. Gratz, 6 Wheat. [19 U. S. 528], the court say, the general rule is that time is not of the essence of a contract of sale; and a failure on the part of the purchaser or vendor to perform his contract on the stipulated day, does not, of itself, deprive him of his right to a specific performance when he is able to comply with his part of the agreement. But circumstances may be so changed, that the object of the party can no longer be accomplished, and he cannot be placed in the same situation as if the contract had been performed in due time; in such case a court of equity will leave the parties to their remedy at law. And in the same case the court remark, if a bill for a specific performance be brought by one who is himself in default, the court will consider all the circumstances of the case, and decree according to those circumstances. These views would seem somewhat to relax the rule laid down by Lord Loughborough in the case of Lloyd v. Collett. And it will, perhaps, be found that in the decisions of the supreme court they have not regarded time, in the specific execution of contracts, when it stands unconnected with controlling circumstances, with the same degree of strictness as has been done in some modern decisions. And there may be some danger in avoiding the loose expressions of Lord Thurlow, on this subject, of going to the other extreme. We may look more at the letter of the contract than its substance. We may regard a morality so strict in this respect as to be governed by legal technicalities, and substantially cut off this great branch of equitable jurisdiction. In almost all the modern cases, in which time has been strictly regarded, it was made of the essence of the contract, by the express agreement of the parties; and the language of the decisions combats the idea that this cannot be done. To hold that the failure of the vendee to pay the purchase money for an hour or a day, should of itself authorize the vendor to rescind the contract, would disregard the distinction which has heretofore been made between the action of a court at law and chancery. Not that the latter has a dispensing power over contracts; but regarding the substance of the contract, as well as its letter, if the chancellor finds that the delay of payment has not operated injuriously to the vendor; that the condition of the parties is the same as when the payment should have been made; that the value of the property has not materially changed; and that the same justice can be done under the circumstances, as if the payment had been made at the time stipulated, chancery will not refuse its aid. And more especially will its aid be given, if the party can assign a reasonable excuse for his default.

In looking to the facts of the case under consideration, it appears that time was not made of the essence of the contract. The times at which the payments were to be made, and the period within which the deed was to be executed, were fixed in the contract; but there was no expression that a failure in any of these should avoid the agreement. And by the subsequent agreement of the parties the payments were suspended on the plaintiff's paying ten per cent. interest, or the amount which was paid on stock by the Miami Exporting Company Bank,

which appears to have been ten per cent. This amount was paid up to about the beginning of the year 1820. And in the forepart of this year, the first default of the complainant occurred. He had entered into the possession of the lot. paid one-third of the purchase money; and expended more than four thousand dollars in improvements. All this was done with the knowledge and presumed approbation of the defendant. If the ten per cent. interest for forbearance be added to the first instalment, and the amount paid for improvement, the sum advanced by the complainant would exceed nine thousand dollars. This was the position of the plaintiff in the beginning of the year 1820, he having made no default. There was due to the defendant, at this time, a sum less than five thousand dollars of the purchase money. About this time the plaintiff was informed of the claim of Chambers and wife, and on enquiry of the counsel in whose hands this claim was placed for prosecution, he was told it would, probably, be sustained. And he was advised by counsel to withhold further payments until the claim was settled. Some time after a bill was filed by Chambers and wife, which was pending in 1827, when the agent of the plaintiff offered to pay to the defendant, the full amount due.

Objection is made to receiving the bill of Chambers and wife in evidence, though duly certified; as it is not accompanied by the answer, and the proceedings of the court, making the complete record. The bill is offered, not to prove its contents, but merely to establish the fact that a bill was filed in the case; and for this purpose, it is competent. The dispute as to the title of the lot, connected with other circumstances, is the excuse offered by the plaintiff for withholding further payments. The circumstances of the defendant, as to his ample means to indemnify the complainant on a failure of the title, can have little or no influence on the rights or remedies of the parties growing out of this failure.

Having stated the acts of the complainant up to this stage of the case, we will turn our attention to the acts of the defendant. Within three months from the time the contract bears date, he was bound to make a deed for the lot. But this he failed to do, nor is there any evidence that he offered to execute it. The first default was committed by the defendant. And how does this affect his rights. Being thus in default was he in a condition to exact a strict performance of his obligations from the complainant? Until he executed the deed, or offered to execute it, could he have called upon a court of equity to decree a specific execution of the contract. The execution of this deed was not a mere matter of form. On receiving the deed the plaintiff was to execute a mortgage to secure the payment of the balance of the purchase money. This would have changed the relations of the par-

ties. The plaintiff would have stood in the relation of a mortgagor, and been entitled to all the rights which pertain to that relation. The defendant as mortgagee might have enforced his legal rights, but he could not have extinguished the rights of the plaintiff except by a bill to foreclose the equity of redemption. And in such a proceeding a court of equity would have given time for the payment of the money. The only excuse set up for not executing this deed is, that the plaintiff did not prepare the deed and tender it to the defendant. This is the rule in England, but it has not been considered the rule in this country. It is not the understanding of the parties. The vendor binds himself to make a deed, and it is his duty to make it. Besides the exact quantity of ground seems not to have been ascertained, by the contract; and the price was fixed at one hundred and twenty-five dollars per foot. It was the duty of the defendant before he made the deed to ascertain the number of feet by actual measurement. The defendant has no excuse for this default. Can a vendor disaffirm his contract, when he is himself in default? Can he enforce a strict compliance with the contract, against the vendee, whilst he himself disregards the terms of it? The rule that he who asks equity must do equity, applies with equal force to both parties. Where a vendor acting in good faith sells land to which he believes he holds a good title, and on which the vendee enters and makes valuable improvements: and it afterwards turns out that the title of the vendor is so defective that he cannot make a good title; the vendee, after a reasonable lapse of time, will be compelled to make his election either to receive the deed or surrender the possession of the premises. But in such case the vendor must show a willingness to make the deed or return the purchase money paid. In this case the defendant brought his action of ejectment in 1822, without tendering the deed or offering to refund the purchase money and pay for the improvements. He attempts to disaffirm the contract, on the default of the plaintiff, some sixteen or eighteen months, disregarding the dispute as to the title, while he himself had been in default for nearly eight years. But he attempts to do more than this. He endeavors to take advantage of his own negligence, by placing the plaintiff in a worse condition than he would have stood, if the deed and mortgage had been executed. This would be a new head of equity arising out of a party's own default.

It is admitted that negligence on the part of the defendant, will not excuse gross negligence on the part of the complainant. But it goes to lessen any hardship complained of by the defendant, and it weakens or destroys his right to a specific execution of the contract. And if it shall appear that the failure of the defendant tended to produce the default of the complainant, it will go far to ex-

cuse him. There are cases in which both parties have been so negligent, as to prevent either from receiving a favorable consideration in a court of equity. And however a party may have disregarded his terms of the contract, the other party to entitle himself to a specific execution of it, must show reasonable diligence. He must do or offer to do that which he is bound to perform, unless prevented by some justifiable excuse, or by the act of the other party. Do the circumstances of this case, which are relied on by the complainant, excuse his default. Chancery will not compel a party to receive a doubtful title, nor in a case where he has expended large sums of money in making improvements on the property, and paid a part of the consideration, will it compel him to make an election to take the title or relinquish the possession of the land, except after a reasonable lapse of time. Where there is no prospect that the vendor, by time, could perfect his title, the election might be directed in a short time; but where, with diligence, the title may be cleared in the course of some months, or even years, under peculiar circumstances, equity will give relief, by adapting its proceedings to the circumstances of the case. Time is often given to the vendor to perfect his title, when he has acted fairly; and until he can make a clear title, there is no case where a court of chancery has compelled the payment of the consideration money; unless the terms of the contract specially require it.

In the case under consideration, the defendant, strictly, had no right to demand a payment of either the second or third instalment, until he had executed a deed for the property. And if he had brought a suit for the money, chancery might have interposed its powers, under special circumstances, by enjoining the proceedings until he had executed the conveyance, not as a matter of form, but such a conveyance as vested a clear title in the plaintiff. If the complainant can be considered in the light of a mortgagor, under the circumstances of the case, his right would be undoubted. The lot would be considered merely a security for the debt, and equity would give the mortgagee his debt and interest, and nothing more. An express provision may be inserted in the mortgage that if the money were not paid at a particular time, the mortgagor shall be foreclosed, yet equity will permit him to redeem in the same manner, as if no such stipulation had been entered into. The mortgagee shall not take advantage of the necessities of the mortgagor and obtain the estate itself, when the payment of the money was the object to be secured. The maxim is, once a mortgage always a mortgage, and in this view it is considered by a court of equity. And why shall not the parties be treated as bearing this relation to each other. If this be not technically their position, it is the fault of the defendant, and shall his own default give him an advantage in equity. Chancery considers what ought to be done by the parties as done. And this rule, it would seem, can in no case apply with greater justice than to the case under consideration.

If, then, in equity, we consider the plaintiff as mortgagor, and the defendant as mortgagee, the lapse of time has not extinguished the plaintiff's equity of redemption. And if this view shall seem to impose some hardship on the defendant, it is chargeable to himself. The court look at this contract, and determine his rights by the rule which he has himself prescribed. They only say that his neglect to execute a deed, has prevented the execution of the mortgage by the complainant; and that equity cannot consider him as placed in a better condition by this neglect, nor the plaintiff in a worse one. But, independently of this view, if the default of the defendant, be connected with the shade that rested upon the title, which was first made known to the complainant about the time his default occurred; and we look at the proceedings at law by the defendant, through which he entered into the possession of the property and still retains possession of it, we think such an excuse arises for the failure of the plaintiff, as to authorize him to ask the favorable interposition of the court. And this view is greatly strengthened by the fact, that the defendant endeavored to put an end to the contract by bringing the ejectment, without making an offer to return the whole or any part of the money paid on the purchase or laid out in improvements. Nor has such an offer been since made. He seems to think that the nine thousand dollars expended on the property, and paid to him by the plaintiff, were either forfeited by his default or reimbursed by the rents he received.

And here the question arises, whether the vendor can disaffirm the contract, where he has himself refused to perform it; at least, without returning or offering to return the money which has been expended on the property; and also the outstanding obligation for the residue of the purchase money. By the doubt in which the title of the lot was involved, and the change of possession, the complainant was compelled to rescind contracts which he had made for the sale of the greater part of it. At no time does he show a disposition to abandon his purchase, if the defendant can make him a good title. But little more than eighteen months had transpired from the failure to pay the ten per cent. interest, under the new agreement, before the ejectment was commenced. And this delay, we think, was excusable, from the doubts resting upon the title, and the other circumstances of the case. And we also think the doubts which still remained on the title. and the embarrassments which resulted to the plaintiff from the acts of the defendant, subsequently to the bringing of the eject-

ment, up to the time the tender was made, may go to excuse the default. The accounts of payments were kept by the defendant, and he refused to exhibit a statement of them, though called on for the purpose. And it appears from the evidence that the property was about as valuable when the tender was made in 1827, as it was when the complainant failed to pay the ten per cent. interest.

From the supplementary bill lately filed, it appears, a part of the lot in controversy was sold by the complainant to Canby, and that he assigned his interest to Carneal. And this equity being still in Carneal, it is objected, that he is not made a party to the suit. Is Carneal interested in this controversy? It is admitted that he might file his bill against Taylor, and set up his equity through his assignees. And if he may do this, is he not interested in the subject matter of the bill. Is not the court called upon to act on an equitable title, which includes the title of Carneal. And if he be not a party to the suit, will his rights be concluded by the decree. It is true, he may look to the complainant for a deed; but is he not the assignee of the plaintiff to the extent of the equity he claims. The supreme court has decided that an assignee in equity must make his assignees a party, when he asks a specific execution of the contract. And this is required to be done, that the rights of the assignor are duly protected. But, how much stronger is the reason to make the assignee of the equity a party, on a bill filed by the assignor. The interests of the assignee are directly involved, and how can these be protected unless he be made a party to the suit? Carneal may have some special ground of equity against Taylor, which the plaintiff has not, and a decree in the case, as it now stands, would not prevent him from setting up this equity hereafter. And if the defendant may be again harassed with the assertion of a right, which is necessarily involved in this suit, he may well object to the further progress of the suit until Carneal shall be made a party, if under the limited jurisdiction of this court it can be done. He has a right to insist that the whole controversy shall be decided in the present suit.

It is a well settled principle that the assignee of an equity is a necessary party, when such equity is set up in a court of chancery. Carneal can be made a party as a co-plaintiff, so that no objection arises to this, from the limited jurisdiction of this court. That some inconvenience may arise in making assignees parties, where they are very numerous, may be admitted. But the same inconvenience arises in many other cases, and for which the law has, as yet, provided no remedy, except in cases where a few persons may sue in behalf of themselves and others.

The question raised as to the ten per cent.

on the purchase money due, under the new agreement, up to the time of the tender, is reserved until the next term; at which time, Carneal having been made a party, the court will be prepared to enter a final decree.

[NOTE. The bill was amended by making Carneal a coplaintiff. The defendant objected to proceeding in the cause as no subpoena was issued upon the amended bill, and that the defendant was not a resident of the district. Both objections were overruled, and a final decree entered in favor of the complainants. Case No. 8,491. From this decree an appeal was taken by the defendant to the supreme court, which affirmed the decree. 14 Pet. (39 U. S.) 172. See note at end of Case No. 8,491.]