GEORGE STEELE *et al.*, Appellants, *v.* THOMAS R. BIGGS *et al.*, Appellees.

<span style="float:right">22 643<br>60a 24</span>

### APPEAL FROM COOK.

Time may be of the essence of a contract, and where that is made clearly to appear, the court will enforce a forfeiture, unless there are circumstances which will relieve against it.

A payment of a considerable part of the purchase money will not excuse the purchaser for non-performance.

In contracts for the sale of land to A. B., his representatives or assigns, a covenant for the payment of money, which is broken, is assignable after the breach, and may run with the land, so as to have a forfeiture declared, if the assignee is by the contract vested with the option of so doing.

A forfeiture may be produced by a reasonable notice of the intention to do so, if a strict performance is not made.

A simple inquiry, as to whether a party will take money, is not a tender. The money must be in the power or within immediate control of the party offering it.

THIS bill charges that Orrington Lunt, of Chicago, one of the defendants hereinafter named, was, on and before the 10th of March, 1853, seized of certain real estate, to wit: Lots 20, 21 and 22, in block 62, and lots 1, 2 and 3, in block 63, in the Illinois and Michigan Canal Trustees' subdivision of lots and blocks, in the W. part of the S. W. ¼ of sec. 9, T. 39 N., of R. 14 E., old town of Chicago.

That said Lunt entered into an agreement with one George McCullough, of Cincinnati, for the sale thereof to him, which agreement was reduced to writing, and signed and sealed by

said Lunt and McCullough, and is to the effect as follows: Agreement made 10th March, 1853, between Orrington Lunt, of Chicago, and George McCullough, of Cincinnati, Ohio; that said Lunt, at the request of said McCullough, and in consideration of the money to be paid, and the covenants, as herein expressed, to be performed by said McCullough, agrees to sell to said McCullough all that certain parcel of land, situate in Chicago, described as follows, to wit: Lots 20, 21 and 22, block 62, and lots 1, 2 and 3, block 63, in the Illinois and Michigan Canal Trustees' subdivision of lots and blocks, in the W. part of the S. W. $\frac{1}{4}$ of sec. 9, T. 39 N., of R. 14 E., in old town of Chicago. Said McCullough agrees to pay to said Lunt $10,000 as follows, viz.: $2,500 at date, which is this day paid; $2,500 on March 10, 1854; $2,500 on March 10, 1855; and $2,500 on March 10, 1856; for which three last payments said McCullough has executed his notes of $2,500 each, with interest at six per cent. per annum, to be paid at Marine Bank, Chicago, and also that he will, in due season, pay all taxes and assessments for any purpose whatever, upon said premises.

And said Lunt further agrees with said McCullough, that upon the performance by said McCullough, of his undertakings in this behalf, and of the payment of principal and interest of the sums above mentioned, he, said Lunt, will, without delay, execute and deliver, in person, or by attorney, a good and sufficient deed or deeds to said McCullough, to the above described premises.

It is mutually covenanted and agreed between the parties hereto, that in case default is made in any of the payments of principal or interest at the times above specified, for payment thereof, and for sixty days thereafter, this agreement, and the provisions thereof, shall be null and void, at the option of said Lunt, his representatives or assigns, and all the payments which shall then have been made hereon, or in pursuance hereof, absolutely and forever forfeited to said Lunt, or at the election of said Lunt, his representatives or assigns, the covenants and liability of said McCullough, shall remain obligatory upon said McCullough, and may be enforced, and the said money, with the interest, be collected by proper proceedings at law or equity, from said McCullough, his executors, administrators or assigns.

It is further mutually covenanted by the parties, that in case of default in the payments aforesaid, by said McCullough, or any part thereof, and the election of said Lunt, his representatives or assigns, to consider the contract at an end, and prior payments forfeited, the said McCullough, his heirs, representatives or assigns, who may have possession, or the right of possession of said premises at the time, shall be considered the

tenant or tenants at will of said Lunt, his representatives or assigns, on a rent equal to ten per cent. per annum, on the whole purchase money above specified, payable quarterly from day of default.

And after such default, and election to consider the contract at an end, the said Lunt, his representatives or assigns, shall have all the powers and remedies provided by law or equity, to collect such rents, or to remove such tenants, the same as if the relation of landlord and tenant, hereby declared, were created by an original, absolute lease, for that sole purpose, on a specified rent, payable quarterly on a tenure at will, and in such case, such tenant or tenants shall pay all taxes and assessments which shall be laid on such premises during continuancy of such tenancy, and shall not commit or suffer any waste or damage to said premises, but will keep and deliver up, on termination of such tenancy, said premises in as good repair (ordinary wear and tear, and unavoidable injury by the elements excepted) as when such tenancy commenced.

Bill shows that said agreement was acknowledged by said Lunt and McCullough before Henry W. Clark, a notary public for Cook county, and a certificate of acknowledgment was thereto appended by said Clark, and said agreement was delivered to said McCullough, and that said agreement and said certificate were filed for record on the day of date of said agreement, in recorder's office of said county.

That said McCullough entered upon said real estate under said agreement; that he made the first and second payments thereon; that he paid taxes thereon; that on the 16th June, 1853, said McCullough entered into articles of agreement with Frederick Becker, of Chicago, in which, for a price therein named, he agreed to convey to said Becker the north twenty-five feet of said lots one, two and three, in block 63; that under said agreement said Becker immediately entered upon said premises, erected a store and made other valuable improvements thereon, and said McCullough occupied the remainder of said estate, until the transfer of said agreement from said Lunt, hereinafter mentioned.

That on the 17th July, said McCullough and Calvary Morris, composing the firm of McCullough, Morris & Co., made a general assignment of all their property, real and personal, owned by them as partners, to complainant, to be disposed of by him, for the benefit of creditors of said concern.

That the interest in said real estate, nominally vested in McCullough by virtue of said agreement, was really owned by said firm of McCullough, Morris & Co., and that by said assign-

ment, the equitable interest of said firm to said real estate, passed to complainant, for benefit of creditors of said firm.

That said McCullough (the said firm joining, in order to show their assent) did, on the 19th day of August, 1854, transfer and assign in writing, the said agreement, and all title to said real estate, to complainant; that said transfer was appended to said agreement, was acknowledged and recorded; and by virtue of said assignment and transfer, all the rights of said McCullough, and of said firm, to said real estate, vested in complainant.

That immediately after said assignment, said real estate was attached as the property of said McCullough, at suit of certain creditors of the firm of McCullough, Morris & Co., and that for the purpose of protecting himself from the attachment, complainant employed counsel in Chicago, with whom he left all the papers relative to said real estate, and that he had no memoranda informing him when said payments became due on said agreement, and relied on his said counsel to inform him.

That at the time of said assignment, he was a resident of Cincinnati, Ohio, and is at present; that he was always ready and desirous to make the payments on said agreement, and that he left directions with his said counsel to inform him when said payments became due, in time for him to meet them.

That his counsel wrote to complainant's agent, at Cincinnati, January 16, 1855, requesting said agent to inform him of the payment which fell due in the spring then ensuing, and stating the day on which it fell due, and the grace reserved thereon; and said counsel afterwards, and from time to time, wrote to said agent, before grace expired, requesting immediate attention to its discharge.

That said agent, either through mistake or inadvertence, failed to inform complainant of said letters, or contents thereof; and complainant did not know that said payment had become due, until on or about the 9th May, 1855; that he thereupon telegraphed to his counsel at Chicago, authorizing him to draw on complainant at sight for amount of said payment and interest, that said dispatch arrived at its destination on said 9th May, after bank hours, and that on the morning of next day, said counsel, or some person representing the interest of complainant, called on said Lunt, and offered to pay the payment then due, and all sums of money then due to said Lunt on said agreement, and said Lunt absolutely refused to take said payment.

That said counsel immediately wrote, either to complainant or his agent at Cincinnati, informing him of Lunt's refusal to receive the payment, and requesting him to tender the same to Lunt in specie; that as soon as his business would permit, com-

plainant came to Chicago, and on the 28th of May (being the earliest day possible) called on said Lunt, and tendered to him the sum of $2,840, in current coin of the United States; that said Lunt then informed him that he would not receive said moneys; that he, said Lunt, had assigned all his interest to George Steele, one of defendants hereinafter named, and a resident of Chicago; that he then called upon said Steele, and made a tender of same money tendered to said Lunt, and said Steele refused to receive it; he then called for said notes at said Marine Bank, and was told by the note clerk that they were not there.

That on the said 9th May, 1855, after bank hours, said Lunt (his wife joining him) made a pretended sale and transfer of all his interest in said agreement and in said notes of said McCullough (collateral thereto) to said George Steele, for alleged sum of $5,685, being amount then remaining unpaid on said agreement and notes.

That at the time of said transfer, the real value of said premises was upwards of $20,000, and the said pretended transfer was made with a view of facilitating a forfeiture of said agreement, whereas the said Lunt thereby confirmed it, and the rights of complainant thereunder, and elected to waive all rights resulting from the lapse of time, and said Steele, by accepting said transfer, assented to terms thereof, and he thereby acquired no right to prevent complainant from paying the consideration money as it fell due, and from receiving deed therefor.

That on the 10th March, 1856, the last payment became due on said land, and complainant on said day, by his agent, tendered to said Lunt the sum of $5,950; that said Lunt refused to receive said money; that complainant, by his agent, then tendered the same coin to said Steele, and said Steele refused to receive it, and complainant called for said notes at said Marine Bank, on the day grace expired on last of said notes, and was told that neither of said notes were there.

That both of said sums tendered as aforesaid have been in possession of complainant since the same were tendered, subject to order of said defendants, and he now holds same subject to order of court.

That on occasion of last mentioned tender, complainant demanded a deed for said premises, and he had repeatedly requested said Lunt to perform his contract as contained in said agreement.

Prays that the agreement so made between said Lunt and said McCullough, and assigned by said McCullough to complainant, may be specifically performed, and that the said pretended transfer of said agreement by said Lunt to said Steele may be

cancelled, and that said Lunt may be decreed to make a proper and sufficient deed of said real estate to complainant, he being ready and willing, and offering specifically to perform the said agreement, in all things, on his part.

The answer of George Steele admits that Lunt was seized, etc., and entered into an agreement with McCullough, as in said bill of complainant is set forth.

That McCullough made the first and second payments thereon to Lunt.

Denies that said McCullough entered upon land and paid the taxes thereon.

Does not know whether McCullough and Morris, composing the firm of McCullough, Morris & Co., ever made any assignment.

Does not know whether the interest in said real estate, vested in said McCullough by said agreement, was really owned by said firm of McCullough, Morris & Co.; nor whether, by assignment, the same passed to said complainant for the benefit of creditors of said firm.

Admits that at the time McCullough, Morris & Co., made said assignment, said complainant was, and has continued to be, a resident of Cincinnati, but denies that complainant has been ready and desirous to make payments, but says that although complainant was repeatedly informed, several months previous to maturity of the payment of $2,500 and interest, due on 10th March, 1855, that on that day said sum would fall due, said complainant was not on that day, nor within sixty days thereafter, ready to, nor did he pay or offer to pay, to this defendant, or to said Lunt, said sum of $2,500 and interest.

Admits that on or about the 28th May, 1855, said complainant, or some other person, called upon defendant and tendered him a certain sum of money; precise sum forgotten; and this defendant refused to receive the same, for the reason that in said contract entered into between said Lunt and McCullough, it was and is provided that in case any default should be made in any of the payments of principal or interest, at the time, or any of the times specified, for the payment thereof, and for sixty days thereafter, that the said agreement should be null and void, at the option of said Lunt, his representatives or assigns, and that all payments made before such default, should be forfeited; and defendant avers that on the 10th March, 1855, there was due on said agreement to said Lunt and his assigns, $2,500, besides interest due, at that time, on unpaid purchase money on said lots; before that time, to wit: on 9th March, 1855, defendant purchased in fee, the said premises of said Lunt, and took an assignment of said contract to himself, which said assignment

and conveyance were filed for record the 10th May, 1855 ; and said defendant avers that default was made by said McCullough and complainant in the payment due on the 10th March, 1855, and that neither of them paid or offered to pay said sum at said time, or within sixty days thereafter, although they were respectively notified by said Lunt, that if payment was not made when due, that he, said Lunt, would declare said contract null and void.

That sixty days after said 10th March, 1855, to wit: on the 10th May, 1855, defendant being assignee of said contract, did consider it void, and that said tender alleged to have been made to defendant, was not made until long after said contract was at an end.

Denies that said tender was made to him at the earliest day possible ; and admits that complainant did call at Marine Bank, but whether for the purpose of paying said notes, this defendant knows not.

Denies that on May 9, 1855, or at any other time, said Lunt, conjointly with his wife, or alone by himself, made any pretended sale of his interest in said agreement, and said notes, collateral thereto, to defendant, but says that said transfer was a real and *bona fide* one, and said defendant then and there paid to said Lunt $5,685 for said premises described in said contract, which sum was all that said Lunt asked, and denies that said sale was made to facilitate a forfeiture of said agreement.

Denies that said Lunt ever elected to waive any right accruing to him in said contract, or so resulting to him from mere lapse of time ; but on the contrary, says that said Lunt repeatedly, by letter and otherwise, gave notice to complainant and McCullough, that unless payment was made at the time when due, said Lunt would declare the contract forfeited.

Avers that on or about the 29th March, 1855, John Woodbridge, Jr., of Chicago, wrote to complainant requesting him to give immediate attention to the payment then due on said contract, and that complainant received said letter, and that said complainant well knew the day on which said payment would fall due, previous thereto, and also well knew that if the same was not paid at the proper time, said Lunt and this defendant would declare the contract void, provided that default should be made for sixty days, and therefore defendant denies that said complainant was not informed when said payment became due, until 9th May, 1855.

Defendant avers that he was, before he made purchase, fully advised of the matters aforesaid, and denies that he became a party to said transfer, with a view of enabling said Lunt to defraud said complainant, or of depriving said complainant of any

42

Steele et al. *v.* Biggs et al.

benefit of said agreement, but on the contrary, said defendant purchased said premises for his own benefit, and that said payment falling due on 10th March, 1855, and not being made within sixty days thereafter, this defendant declared the same forfeited by reason of non-payment, and still insists that the same is wholly void.

Says that had complainant carried out his part of said agreement, that then this defendant would have been ready to perform the said agreement, although defendant avers that he was in no manner bound by any agreement so to do.

Says that in and by the said contract so made between said Lunt and McCullough, said McCullough agreed to pay all taxes and assessments whatever, which might be assessed on said premises; but defendant avers that after the making of said contract, and up to the time he so purchased said premises, and since, neither the said McCullough, nor any one for him, has paid all such taxes and assessments; by means whereof, and of the election of both said Lunt and defendant, and by default of said McCullough, and complainant claiming under him, in making the said payments, the said contract became wholly at an end, and no longer obligatory on said Lunt or this defendant, from and after the 10th May, 1855; and defendant insists that by reason of the premises he holds the said premises wholly discharged from said agreement so made with the said McCullough, and from any claim by reason thereof, by whomsoever the same may be interposed.

The answer of Lunt is much the same as that of Steele.

Copies of letters, written to Biggs and McCullough, by O. Lunt:

*" January* 9, 1855.

"I notice you have made an assignment to Mr. Biggs. The next payment of $2,500 is due at the Marine Bank, on the 10th day of March next, and will have to be met promptly, as I have a large note falling due about the same time, and rely on this for a part of it. Yours truly, O. LUNT."

*" January* 9, 1855.

" THOMAS R. BIGGS, ESQ.:

*" Dear Sir :*—This will notify you that there will be due, at the Marine Bank, in this city, on the 10th day of March next, on lots 20, 21 and 22, block 62, lots 1, 2 and 3, block 63, of old town of Chicago, from Geo. McCullough, and from the records here, I notice he has assigned them to you. I write to give you due notice, as I must have the payment, and unless paid on the day, said contract will be forfeited, and declared as such. Yours truly, O. LUNT."

*" Dear Sir :*—I wrote you some time since, asking if the payments on the McCullough note would be promptly met, and understood from you they would be, and I relied upon it. On the 8th instant, you wrote me it would be delayed ten days. Since that time I have heard nothing from you, and I have had much inconvenience, and obliged to lay over some of my paper in the Bank. By the delay,

Steele et al. *v.* Biggs et al.

the whole of the payments will become due. All I can say is, I have taken measures to declare the lots forfeited for non-payment, in accordance with the notes.

" Yours truly,　　　O. LUNT."

Answers to O. Lunt's letters:

" CINCINNATI, January 25th, 1855.

" O. LUNT, ESQ.:

" *Dear Sir :*—Your favor of the 9th instant, was duly received, but owing to circumstances out of my control, I have been prevented from answering you as I desired, until the present. I have been unable until to-day, to see Mr. Biggs, who is to make you the next payment, and he informs me that he intends to do so by the time it is due ; he has the money I know, and I think you may depend on it. I do not understand how it happened that the property was sold for taxes, as Messrs. Rees & Kerfoot promised me to pay the taxes, and they having sold a lot in the West, and had funds, I supposed it was done; indeed, they sent or drew on me for a tax bill, which was paid, for the year 1853. Whether it was all the taxes, or not, I cannot say, but if not, it should have been, and they should have paid it; and now I wish you would call on them, and make the inquiry, and get them to attend to the settling of the taxes, with the person who bought them, and they can satisfy themselves out of the payment or money which they will receive for the lot which they sold. Please get them to write me the amount of taxes on each lot, and how much they will have to pay.　　　Yours truly,　　　G. McCULLOUGH."

" CINCINNATI, March 8th, 1855.

" MR. O. LUNT:

" *Dear Sir :*—I received a notice of a note due you, falling due at the Banking House of Geo. Smith & Co., Chicago, on the 10th proximo. I have the funds to meet it, but there are some judgments against the property, favor of some of McCullough, Morris & Co.'s, and I want them to agree to return the money if they gain the suit. The arrangement is not entirely complete, but I think will be in ten days ; then I will send you the money.

" Yours truly,　　　T. R. BIGGS,<br>*Assignee for Morris, McCullough & Co.*"

" P. S. I regret the delay very much, and will send the money as soon as the contract is signed.　　　　　　　　　　　　　　　　　T. R. B."

" CHICAGO, March 29th, '55.

" ORRINGTON LUNT, ESQ.:

" *Dear Sir :*—I have written to Thomas R. Biggs, the assignee of McCullough, Morris & Company, requesting him to give immediate attention to the payment of the installment now due on the articles of agreement assigned by them, and shall hear from them in a few days. He will doubtless meet the payment at once.

" Yours, etc.,　　　JOHN WOODBRIDGE, JR."

Defendants also read the following letter:

" CHICAGO, March 28th, 1855.

" THOMAS R. BIGGS, ESQ.:

" *Dear Sir :*—I wrote you in the winter, asking if the payments on the McCullough lots would be promptly met, and understood from McC. they would be, and I relied on them, having a large amount to pay. On the 8th you wrote, saying it would be delayed ten days, the cause of which I could not see, but could as well

have been arranged before as after the 10th. Twice the length of time you named has passed, and I hear nothing from you. Had I not been advised it would come, I would have made different arrangements, and not have to have my note laying over in the bank, very much to my inconvenience. By the delay, the whole of the payment will become due. All I can say is, I have taken measures to declare the lots forfeited for non-payment, in accordance with the notes.

" Yours, ORRINGTON LUNT."

There was a decree for a specific performance, according to the prayer of the bill.

SCATES, MCALLISTER & JEWETT, for Appellants.

WILLIAMS, WOODBRIDGE & GRANT, for Appellees.

BREESE, J. There are but two questions we consider very material in this case. The first is, was time of payment of the essence of this agreement; and the other is, did the defendant, or any authorized person for him, make a legal tender of the payment in money, as required by the terms of the agreement.

The appellee denies that time was of the essence of this contract. To determine it, we must look to the agreement and its several clauses relating to this point. The clauses provide as follows:

" It is mutually covenanted and agreed between the parties thereto, that in case default is made in any of the payments of principal or interest at the times above specified, for payment thereof, and for sixty days thereafter, this agreement, and the provisions thereof, shall be null and void, at the option of said Lunt, his representatives or assigns, and all the payments which shall then have been made hereon, or in pursuance hereof, absolutely and forever forfeited to said Lunt, or, at the election of said Lunt, his representatives or assigns, the covenants and liability of said McCullough, shall remain obligatory upon said McCullough, and may be enforced, and the said money, with the interest, be collected by proper proceedings at law or equity, from said McCullough, his executors, administrators or assigns.

" It is further mutually covenanted by the parties that in case of default in the payments aforesaid, by said McCullough, or any part thereof, and the election of said Lunt, his representatives or assigns, to consider the contract at an end, and prior payments forfeited, the said McCullough, his heirs, representatives or assigns, who may have possession, or the right of possession of said premises at the time, shall be considered the tenant or tenants at will of said Lunt, his representatives or assigns, on a rent equal to ten per cent. per annum, on the whole purchase money above specified, payable quarterly from day of default.

" And after such default, and election to consider the contract at an end, the said Lunt, his representatives or assigns, shall have all the powers and remedies provided by law or equity, to collect such rents, or to remove such tenants, the same as if the relation of landlord and tenant, hereby declared, were created by an original, absolute lease, for that sole purpose, on a specified rent, payable quarterly on a tenure at will," etc.

These being the terms of the contract of the parties, it would be difficult, we think, to make more clear and explicit the intent of these parties to make time essential.

The case of *Bishop* v. *Newton*, 20 Ill. R. 180, to which the appellee has referred, in which similar provisions to these were contained in that contract then before us, does not hold, nor was it intended to hold that they do not make time material. Time was there made material by the clause declaring that " if said Bishop fails to make payment within fifteen days after the first day of January, 1856, he forfeits what he has paid, and all rights under this bond." But there was in that agreement, a precedent or concurrent condition to be performed by the vendor, in relieving the premises of an incumbrance, and which he had failed to perform, or to show any readiness to perform on his part, and for this default, the court refused to decree a forfeiture.

We have always held, that the doctrine of equity, is compensation, not forfeiture, (*Morgan et al.* v. *Herrick*, 21 Ill. R. 497,) and in passing upon the facts and circumstances in each and every case, when the powers of this court are invoked for the enforcement of such strict legal rights, it will never disregard such facts and circumstances as excuse a strict performance at the day, to mitigate the rigor of a forfeiture, or absolve from it altogether. There may be undoubtedly, in many cases, such circumstances as should restrain the vendor from the strict enforcement of a contract ; and as will entitle the purchaser to a specific performance, although he may have failed of a strict compliance at the day. Numerous cases of this kind can be found in the books.

In this point of view, part performance will have, accompanied by other circumstances, great weight, as when the vendor is himself in default in some important matter ; or when he has accepted part payment after the expiration of the time fixed for full payment. Such we understand to be the general principles recognized in the case of *Brashier* v. *Gratz et al.*, 6 Wheaton, 528, cited and approved in *Bishop* v. *Newton*, and such is the case of *Murphy* v. *Lockwood*, 21 Ill. R. 611. But neither of these cases establish the principle that part performance, or a payment of a considerable part of the purchase money, will excuse the

purchaser from a strict compliance with his agreement if it be insisted upon.

We believe the general and approved rule on the subject of specific performance to be, that the parties may make the time of performance material in relation to each and every successive act to be done, if there be a series of such acts, and when parties do so, courts of equity will not relieve the party in default without a just excuse for, or acquiescence in a breach, or a waiver of the breach. *Tyler* v. *Young et al.*, 2 Scam. R. 446; *Smith* v. *Brown*, 5 Gilm. R. 314; *Glover* v. *Fisher*, 11 Ill. R. 673; *Kemp* v. *Humphreys*, 13 Ill. R. 577; *Wynkoop* v. *Cowing*, 21 Ill. R. 570.

The case of *Smith* v. *Brown*, 5 Gilm. R. 314, was a case of part performance, by payment of a considerable portion of the purchase money, yet the court placed no particular stress upon that, holding it was not a sufficient excuse for subsequent default in complying strictly with the true intention of the parties. The cases of *Bishop* v. *Newton*, 20 Ill. R. 178, and *Morgan* v. *Herrick*, 21 ib. 495, recognize the same leading principle.

The appellee, however, insists that the covenant to pay the third installment on the day, was broken before the sale and assignment by Lunt to Steele, and therefore, upon a breach, it became a personal covenant, and could not run with the land, or be transferred by an assignment of the contract.

This is true perhaps, of real covenants, but this is not of that character; it is a contract or covenant for the payment of money, and of a character, such as in equity, are assignable. The covenants on the part of McCullough, were merely money covenants and assignable as such. Whether or not, the conditional power of forfeiture at the option of the vendor, upon failure of punctual payments, was assignable before or after a breach of the condition, as a general principle of law, we do not discuss or decide, believing it to be unnecessary in this case. The contract discussed, extends to the vendor, Lunt, and " his representatives or assigns," either of whom, by the agreement itself, might exercise and declare " the option " and " consider the contract at an end, and prior payments forfeited," and he and " his representatives or assigns" were " to have all the powers and remedies provided by law or equity," for the enforcement of the vendor's rights and remedies. It is not therefore, in our judgment, a question of the legal assignability of the agreement, or of suing upon it, but a plain matter of agreement with the representatives or assigns, which empowered them to act under it. We do not conceive it material how the rights of the " assigns " arose in this case, whether by the conveyance of the land to Steele, or the assignment of the money covenant, for

both modes of transfer were adopted, and Steele became such " assigns," in the true sense of the agreement, and as such he was entitled, by the express language of the agreement, to exercise and declare the " option " or to receive the money, if the appellee had not forfeited his right to pay it.   But Lunt himself made his option, and rescinded the contract so far as he was authorized to do, as vendor, by the very act of conveying the land to Steele, and Steele did the same, by refusing the money. Therefore it follows, if on such default the vendor or his " assigns " made the election to forfeit, the contract then became absolutely null, as a contract to convey, and thenceforward stood merely as a lease, according to its express provisions.   *Dominick* v. *Michael,* 4 Sandford, 426 ;   *Glover* v. *Fisher,* 11 Ill. R. 673 ; *Harrington* v. *Wheeler,* 4 Vesey, Jr., 689, note 2, giving the decision in *Lloyd* v. *Collet,* 4 Bro. C. C. 469.

A forfeiture may be proved by a notice from the vendor to the vendee, that he will require a strict performance at the time fixed, provided the notice be a reasonable one, under all the circumstances.   1 Sug. on Vendors, 360; Adams' Equity, 225 ; *Miller* v. *Chrisman,* 21 Ill. R. 227.

There is also a class of cases where time is in equity deemed to be material and a punctual performance required, though not so specified in the contract.   They are adverted to by Baron Alderson in *Hipwell* v. *Knight,* 1 Younge and Collin Ex. 415. He illustrates this class by some examples, as, " If the thing sold be of greater or less value according to the effluxion of time, it is manifest that time is of the essence of the contract, and a stipulation as to time, must then be literally complied with in equity as well as at law."   " The cases of the sale of stocks, and of a reversion are instances of this.   So also if it appears that the object of one party known to the other, was that the property should be conveyed on or before a given period, as the case of a house for a residence or the like."   " I do not see, therefore, if the parties choose, even arbitrarily, provided both of them intend so to do, to stipulate for a particular thing to be done at a particular time, such a stipulation is not to be carried literally into effect in a court of equity.   This is the real contract. The parties had a right to make it.   Why then should a court of equity interfere to make a new contract which the parties have not made nor consented to ?   It seems to me, therefore, that the conclusion at which Sir Edward Sugden, *in his valuable treatise on this subject,* has arrived, is founded in law and good sense."

In 1 Sugden on Vendors, 359, will be found a summing up of all the authorities to this effect.   Judge Story reaches the same conclusion that Baron Alderson does.   2 Story Equity Juris. § 776, note.   Many other American and English authorities

might be cited to the same effect. See also Fry on Specific Performance of Contracts, Law Library, 69, page 216, and cases there cited.

Lord Roslyn said, in the case in 4 Vesey, Jr., *ante*, " the conduct of the parties, inevitable accidents, etc., might induce the court to relieve ; but it was a different thing to say the appointment of a day was to have no effect at all, and that it was not in the power of the parties to contract that if the agreement was not executed at a particular time, the parties should be at liberty to rescind it."

Upon the other question of tenders, there does not seem much room for discussion.

The witness Woodbridge, called to prove a tender, who was neither a party in interest, but acting for the attorney of the appellee, without a dollar in his possession applicable to this payment, and, for anything shown, without the power of raising money by selling a bill on the defendant even had *he* been authorized to draw instead of the appellee's attorney, simply applied to the appellant Lunt, to know if he would take the money which the witness, or the attorney, would raise during the day. Lunt declined to have anything to do with it, upon the declared ground, that he had rescinded the contract, by selling to Steele. No application was made to Steele who then owned the land and the money covenant, if money was still due and could be paid under it. This inquiry, or offer if it may be so called, lacked several ingredients to make it a good tender, even waiving the point as to its having been within the forfeiture. In the first place, it was not made to the proper person. It was not made at the proper place, for the note was made payable at the Marine Bank in Chicago, and no tender is shown there, and the offer to Lunt on the 10th of May was not accompanied by the money—it was not in the power of the witness to produce it even if Lunt had then agreed to accept it.

A party attempting to make a tender, must be able to show that he has the money in his power or reach to perfect it, if accepted. A refusal to accept, may, under certain circumstances, dispense with the actual count of the money, but never can be received as an excuse for not having the money at command. When offered as an apology for not having the money, the refusal amounts to nothing. This court say, in the case of *Buchanan* v. *Horney*, 12 Ill. R. 336, that a tender is *stricti juris*, and must be clearly proved. The general rule is, that the money must be produced and counted—it must be in sight, and capable of immediate delivery, for great importance is attached to the production of the money, as the *sight* of it might tempt the creditor to yield and accept it. 2 Greenl. Ev. §§ 601, 2. It must be ab-

solute, and to the creditor himself, his agent, attorney, clerk or servant, and at the time the contract requires. Ib. §§ 605, 6, 7.

And, to constitute a legal tender, it is essential to prove an actual offer of the sum due, unless the actual production and offer of the money be dispensed with, by the express declaration of the creditor that he will not accept it, or by some equivalent act. Ib. 603; 3 Starkie's Ev. 1067–1070; *Sloan* v. *Petrie*, 16 Ill. R. 261; *Wynkoop* v. *Cowing*, 21 Ill. R. 587.

Again, as to the time at which it was made. The appellee claims days of grace, and would have the computation of the sixty days under the contract, begin at the end of the days of grace.

Days of grace are given in some States by statute. We have no such statute, nor has our statute on the subject of promissory notes received such a construction. But, as we do not regard what was done, as amounting to a tender, it is unnecessary to pass upon this question. No actual tender is shown for more than fifteen days after the time, allowing the days of grace. The question of days of grace can only arise upon showing a good tender, made within the days of grace, and that has not been done.

But there is another solution of the question, and grows out of the intention of the parties as to the time. Resort should not be had to technical rules of interpretation, when the common understanding, or intent, is obvious. The sixty days are purely conventional, and there is nothing in this record showing any intent to inject a strictly mercantile principle into the contract, which shall give the party bound to pay, three days more than was stipulated and agreed upon, within which to pay. The intent seems to us clearly against this gratuity.

These contracts may be hard, but of that we cannot concern ourselves. Our office is simply to interpret, not to make contracts for parties. When there is no ambiguity about them, are not against law, not unconscionable, and are made in good faith, we are bound to enforce them.

It must be remembered, too, that vendors of real estate may have the most important interests depending upon the punctual fulfillment of contracts by purchasers. Such appears to have been the case here, of which the appellee was duly and timely notified, and that a want of punctuality would compel Lunt to rescind the contract, and declare a forfeiture, to save himself from similar losses by breach of his own time contracts. Self-preservation is the first and universal law, and, viewed in this light, the rigid rule in this case may not only be just, but perfectly equitable.

The decree of the court below is reversed.

*Decree reversed.*