# ISAAC ANDERSON

*v.*

# CATHARINE MCCARTY *et al.*

1. VENDOR AND VENDEE—*forfeiture of contract—rights of purchaser after.* Where a person purchases a lot of ground and receives a bond containing a clause authorizing a forfeiture on default in payment, and the purchaser sells, and receives the pay for a part of the lot, to another, and on default the contract is forfeited, and the widow of the second purchaser afterwards buys and pays for the whole lot and improves the same: *Held,* that she did not thereby become a trustee for the first purchaser.

2. TITLE BOND—*forfeiture.* Where a title bond contains a clause authorizing the vendor to declare the contract forfeited on non-payment of instalments of the purchase money, and notice is given that a forfeiture will be declared or payment enforced, and notice afterwards given that the vendor had elected to declare a forfeiture of the contract: *Held,* that the contract was thereby forfeited and the vendor could again sell the property, and the first purchaser had lost all claim to the property.

3. SAME. Where a title bond contains such a clause and default is made in payment, a forfeiture may be declared by any act on the part of the vendor which evinces an intention to declare a forfeiture, and will prevent the vendor from enforcing the contract, such as giving notice that a forfeiture has been declared, offering to sell the land to others, or even placing it on a sale list, etc.

4. PURCHASER—*abandonment of contract.* Where a person purchases land and is notified that it is forfeited, and offers to pay no more purchase money, and fails to pay taxes on the property or to do any other act towards carrying out the purchase, for eight or ten years, it will be presumed that he had entirely abandoned the purchase, and it would be inequitable to permit him to come in after that time, when the property had risen in value, and large and expensive improvements had been made on it, and hold the property.

5. PURCHASER—*no right to question the manner in which a subsequent vendee holds.* In such a case, the first purchaser can not be heard to urge that the second purchaser, being a widow and administratrix of her husband's estate, had used the funds of the estate to make the purchase. If that were true, it could only concern her and her deceased husband's heirs, and it would be for them to adjust their equities between themselves.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. W. T. BURGESS, for the appellant.

Messrs. GOOKINS & ROBERTS, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity, brought by appellant, in the Superior Court of Chicago, against appellees, to enforce a specific performance of an agreement, and to compel a conveyance of certain real estate in the city of Chicago.

It appears that in March, 1855, Naomi Johnson was the owner of a piece of ground known as lot 2, in the east part of Ellis' addition to Chicago ; that, at that time, she and her husband, John Johnson, executed to Henry Smith a power of attorney authorizing him to take charge of, lease, sell, or otherwise dispose of the property ; that, on the 2d day of February, 1856, they, by their agent, contracted to sell the lot to appellant, and gave to him a contract for its conveyance on his paying therefor the sum of $1400, payable at the office of Ogden, Jones & Co., in Chicago—$200 in hand, $300 on the 1st days of February, 1857, 1858, 1859 and 1860, with six per cent per annum, and all taxes levied for revenue purposes after 1855, together with other assessments.

A strict performance of the contract on the part of appellant was made of the essence of the agreement, and it provided that, if default in the payment of either principal or interest should be made for sixty days after the same became due, the contract should become null and void at the option of the vendors, and all payments thereunder should become absolutely forfeited to the vendors. It appears that appellant paid $200 on the delivery of the contract, $372 for the second payment at maturity ; on the third payment $200 on the 15th day of March, 1858, on account of the fourth instalment, and $164.22

5—61ST ILL.

as the balance of that instalment on the 13th day of the following May. He also paid taxes for 1858 and 1859, but no other payments were made by him.

Appellant, on the 6th of February, 1857, sold to Patrick McCarty a portion of the lot for $1000, and conveyed it to him. On the 16th of March, 1858, McCarty died, leaving a widow and heirs surviving him. Catharine McCarty became the administratrix of the estate of her deceased husband. It seems appellant, on the 29th day of April, 1856, sold and agreed to convey to one Dykeman another portion of the lot for $1000, which contract was transferred to one Titsworth, who now claims its benefit. This last contract was not recorded until the 16th of August, 1869. In 1859, the agency of Ogden, Fleetwood & Co., of this property, ceased, and Henry S. Rucker was appointed agent, with a power of attorney authorizing him to take charge of the property, to sell, etc. On the 20th day of April, 1861, Mrs. McCarty purchased the whole lot, paying to Rucker $500 as the consideration, and receiving a deed therefor executed by Rucker as attorney in fact of John and Naomi Johnson. She had, before the commencement of this suit, placed improvements on the ground costing over $5000.

It seems to be the theory of the bill, in part at least, that Rucker only intended to convey to Mrs. McCarty the portion of the property which her husband had purchased of, and paid for, to appellant, and by mistake had conveyed the entire lot. The evidence of Loomis clearly contradicts this theory. He swears that he advised Mrs. McCarty to pay the $500 and take the whole lot, and thus endeavor to save something of the amount paid to appellant; that she was disinclined to the arrangement, but finally concluded to do so, and the purchase was made. And the evidence of Fitch corroborates his testimony, and the evidence of Mrs. McCarty is to the same effect. These, since the death of Rucker, are probably the only persons who know the facts. From the entire evidence, we have

no hesitation in believing that it was the intention to sell, and her design to purchase, the entire lot.

It then remains to determine what interest was acquired by Mrs. McCarty's purchase; whether she acquired the entire title for herself and the heirs of her husband, or only the portion conveyed to him by appellant, and holds the balance as a trustee for him and his grantees. This depends upon whether appellant's purchase was forfeited. Fitch swears that, first, a notice was served on appellant that the fourth instalment was due, and unless the money should be paid by a day named, the vendors would elect to declare a forfeiture or to enforce payment. After the last payment fell due, he swears a formal notice of a forfeiture was served on appellant, a copy of which was produced, indorsed served on him on the 7th day of May, 1860. About the date of this notice there seems to be some doubt, as it was torn off by Fitch, and who, in restoring it, wrote it 1857; but he says that could not have been the true date. This is apparent, as Rucker was not constituted the agent for the property until in 1859, and his name is to the notice, and it recites the fact that the instalments of 1859 and 1860 were both due. We must, therefore, conclude that it was after February 1st, 1860. And this view is greatly strengthened by the fact that there was an entry of the forfeiture in Rucker's book, of May 5th, 1860. From all of this evidence, we can entertain no doubt that a formal forfeiture was declared, and due notice thereof given to appellant.

But even if it could be conceded that there was not a formal notice of a forfeiture served on appellant, there is abundant evidence of the declaration of a forfeiture. In the case of *Chrisman* v. *Miller*, 21 Ill. 227, it was said that, so long as the vendor reserves the right to sue on the covenants, he can not treat the contract as forfeited. But when the purchaser is in default he is at the mercy of the vendor, and the mere act of offering the land for sale, or entering it in the sale book of the vendor, or any other act showing he considers the contract as ended, or has treated it as terminated, is sufficient to

end the agreement and to deprive the purchaser of the right to insist on a performance of the covenants, and the vendor of the right to sue upon the contract. The mere act of selling to a third person is, of itself, a sufficient election of the vendor to forfeit the contract, and releases a remedy on its covenants. Such is the undoubted effect of such a sale under such an agreement. And to the same effect are the cases of *Steele* v. *Biggs*, 22 Ill. 643; *Milnor* v. *Willard*, 34 Ill. 38; *Murray* v. *Schlosser*, 44 Ill. 14, and *O'Neal* v. *The Wabash Avenue Baptist Church*, 48 Ill. 349.

The sale, then, to Mrs. McCarty, was, of itself, a sufficient declaration of a forfeiture to terminate the contract. After that sale the vendors could not have maintained an action on the agreement to recover the purchase money, or have maintained a bill for a specific performance. When appellant failed to meet the payments at the time specified, he was in default and at the mercy of his vendors, and they exercised the right of ending the contract and the purchaser took the title.

Again, Loomis swears that he, Rucker and appellant, met and had an interview in reference to this property, when appellant agreed that it might be sold to Mrs. McCarty. From this, and the fact that he had ceased to pay taxes, or, so far as we can see, to make any efforts to perform his part of the contract, for nearly ten years, we can draw no other inference than he had abandoned the contract and all claim to the land. It had, no doubt, become greatly depreciated in value during the close money market after 1860, and he did not then regard it of sufficient value to make an effort to pay the balance. And as a further evidence of the fact, he stood by, living in the city, and saw large sums of money expended on the premises by Mrs. McCarty. This indicated that he had abandoned all claim to the property, as, if he had not, it would be manifest that he sought an unjust advantage in permitting her to pay the taxes and to expend large sums of money in improvements that he might ultimately appropriate them to his own

use. After such a delay, and the changed condition of the property, improvement and appreciation by the growth of the city and country, we feel no inclination to treat Mrs. McCarty as a trustee, unless it was, at least, satisfactorily proved, which has not been done in this case.

It is useless to say, because McCarty had purchased fifty feet on the south side of the lot and paid appellant for it when he had no title, and was not candid enough to so inform McCarty, that Mrs. McCarty occupied such a relation to appellant or to the property as to be unable to repurchase it, and the balance of the lot, without becoming his trustee. If a trust relation existed, upon what was it based? Surely not on the fact that appellant had sold her husband land for which he then had, and subsequently acquired, no title; obtained his money for its full value, never refunded it or offered to refund it. And this, so far as we can see, is the only ground, when it is examined freed from extraneous circumstances, upon which a trust could be claimed. Instead of its being equitable to hold that such a transaction should create the relation of trustee on the part of the purchaser or his heirs, it would be highly inequitable and unjust. If any trust was created, appellant became McCarty's trustee for the thousand dollars he obtained from him, and for which he gave no consideration. Mrs. McCarty did not owe him anything, but he was indebted to the estate if anything was due from one to the other party. She made no promise or agreement to convey this property, or any portion of it, to appellant. We can not discover the slightest pretext for saying that she was under any obligation, legal or moral, to purchase this property and hold it for more than eight years for the use of appellant.

Nor is it any concern of appellant whether Mrs. McCarty purchased it with her own or the money of her children; whether she claims it in her own right, or as trustee for her children. Even if she had defrauded the heirs in the transaction, we do not perceive that, by any process of reasoning, appellant can derive the slightest benefit therefrom. Those are

questions between her and the heirs of her husband, and are for them to adjust. And, so far as we can see, the evidence in relation to her claiming the taxes from the estate, and her only claiming dower in the portion purchased by her husband, can only relate to the settlement of equities between the widow and the heirs.

After a careful examination of this record, we are unable to see any error in the decree below, and it is affirmed.

*Decree affirmed.*