Sim Asia, Appellant, vs. John C. Hiser, as Administrator of Edwin P. Hiser, deceased, and Maria C. Hiser, Appellees.

1. The specific performance of a contract for the sale of lands is not a matter of right in either party, but the right to such performance rests in the sound reasonable discretion of a court of equity.

2. While equity does not regard time as of the essence of such a contract unless it is so expressly stipulated, yet it will require of one who seeks the specific performance of such an agreement that he shall not be guilty of unreasonable delay.

3. While time may not be of the essence of the original contract for the sale of land, it may subsequently be made so by an express notice given by a party who is not in default, to the other party who is in default, requiring the contract to be performed or rescinded within a stated time, which must be a reasonable time according to the circumstances of the case.

4. The notice mentioned in the preceding head-notes need not necessarily be in writing ; a verbal notice is sufficient.

5. The rule stated in the preceding head-notes in reference to time being made of the essence of the contract by a notice subsequently given, has application not only to cases where a

single payment in full is provided by the contract, but to cases of payments by installments, and the time of performance may in such manner be made material as to the payment of each and every successive installment.

Appeal from the Circuit Court for Putnam county.

### STATEMENT.

On February 23d, 1887, the appellant, who was complainant in the court below, brought suit in equity against Edwin P. Hiser and Maria C. Hiser to enforce the specific performance of a contract for the sale of a tract of ten acres of land. A decree was entered dismissing the bill of complaint. Edwin P. Hiser, one of the original defendants and appellees, died after appeal was perfected, and his administrator has been made a party to the appellate proceedings by an order of this court. The record is voluminous and there is considerable conflict and contradiction in the testimony contained therein. The pleadings are too diffuse and the testimony too lengthy to be inserted here in *ex tenso*. The gist of the case, as established in the court below, as deduced from the pleadings and the evidence submitted therein, is substantially as follows: About May 1st, 1880, Sim Asia, the complainant, made a parol contract with the defendant Edwin P. Hiser, acting for himself and as agent of the other defendant Maria C. Hiser, for the purchase of a ten-acre tract of land lying near San Mateo, in Putnam county. The price to be paid was $700, and payments were to be made as follows: At the end of the first year $56, being the interest at 8 per cent. upon the principal sum; and at the end of the second year $56 interest, and $100 of the principal; at the end of the third year interest

upon the balance due and $100 of the principal; at the end of the fourth year interest upon the unpaid amount and $100 of the principal; at the end of the fifth year interest on the amount remaining unpaid and $200 of the principal; and at the end of the sixth year the balance remaining unpaid of the principal and interest. The complainant in pursuance of said agreement went into possession of the land, erected a small dwelling thereon, cleared up a portion of the same and planted several hundred orange trees thereon. At the time of and before the agreement for sale of the property Edwin P. Hiser, representing himself and his co-defendant, was reluctant to sell the complainant the land in dispute, as it was, on account of its location, fronting upon the St. Johns river, higher priced land than said Hiser thought the complainant's means justified him in buying entirely on credit, and said defendant being afraid of complainant's ability to pay the purchase money, advised him to buy something cheaper—the defendants owning cheaper lands not so eligibly located. Upon complainant's persisting in buying the fancy priced property, the said defendant agreed to sell it to him, but told him that if he bought it, he must make his payments, principal and interest, promptly at the times agreed upon. On May 1st, 1891, when the first installment of interest became due, the land had not yet been surveyed and located, although defendant had taken possession, and some of the boundaries were understood. The survey was made in August, 1881. May 1st, 1881, the complainant was not able to pay all the interest due on that day, but offered to pay a part of it. The defendants refused to accept a part, but upon complainant's urgent request extended the time for a few days, when the entire amount was

paid. At the time of granting this short extension the defendant Edwin P. Hiser told the complainant that if he (complainant) was not able to pay the first installment of interest, he (Hiser) could not see how he (Asia) would ever pay the principal and balance of the interest. Said Hiser then proposed to the complainant to surrender the land in controversy, and that as he did not want him to lose anything, by reason of the work he (complainant) had done upon the land, he (Hiser) would give him a deed to five acres more, back in the hammock, near where some other colored people had been buying. Hiser told the complainant that he made this proposition because he did not believe the complainant could ever pay for the land he had purchased. In August, 1881, the land was surveyed and defendants signed and sealed a bond obligating themselves to make a conveyance of the same when the payments for same were made in the manner hereinbefore mentioned. The original of this bond was never delivered to complainant, but he was furnished copies of same upon request. By consent of both parties the instrument was dated May 1st, 1881. On May 1st, 1882, when $56 of interest and an installment of $100 principal became due, the complainant was not prompt in payment of even the interest, and the defendants demanded of him that the contract be rescinded. The complainant urgently persisting in his request for more time, it was agreed by the parties that an extension of a few days be granted to pay the principal, and that $50 of the past due installment be extended to June 1st, 1882, and $50 until August 1st, 1882; and that if the complainant failed to meet these payments promptly in full when the same became due, that he would give up the land without any hard feelings, and accept a

deed for ten acres located elsewhere, which the defendants, in that event, agreed to make him, and the agreement now sued upon was to be considered at an end. The interest was paid in a few days according to agreement. Several days after the first of June the complainant brought the $50 due on that date according to the extention agreement, but the defendant Edwin P. Hiser refused to accept the same as a payment, but told him that he would take the same and hold it in trust for complainant until the next $50 was due, and that if he made such next payment promptly when due, the two payments would be endorsed on the bond for title, and complainant might go ahead; that if he failed to make such next payment of $50 when due, he must get off the land. When such next payment became due complainant failed to meet it, but offered only about $18 upon the same. The defendant Edwin P. Hiser then demanded that he give up the land, but finally agreed to give him a few days more to raise the money. The complainant returned in a few days stating that he could not raise the money, and defendant offered to return the $50 held by him in trust for the complainant as above stated, but the complainant immediately left, and would not receive the same. Some days afterward the complainant came back with the money, but the defendant Edwin P. Hiser refused to accept the same, but told him he had broken the contract and must leave the place, and some time after defendant Edwin P. Hiser told him that he must not make any more improvements upon the land. In May, 1883, the defendant Edwin P. Hiser went to see the complainant for the purpose of arranging matters between them without suit if practicable, and the complainant referred said defendant to Judge Gillis, his attorney,

for settlement. Judge Gillis, after inspection of the premises, suggested that the defendants pay the complainant $500 for a rescission of the contract and a surrender of the premises. This payment and rescission Judge Gillis thought would be a good thing for both parties. Defendant Edwin P. Hiser agreed to the suggestion of complainant's attorney, but complainant himself would not accept, although his attorney advised him to do so. The complainant remained in possession of the property, but the only further efforts made by him to pay or tender the money due for the same was as follows: On April 6th, 1885, after defendants had in contemplation legal proceedings for a recovery of the property, of which complainant had notice, he deposited in the First National Bank of Palatka, to the credit of Edwin P. Hiser, the sum of $485. The defendant Edwin P. Hiser had notice of this deposit. It was made without his authority, knowledge or consent, and he never received or accepted the same for himself or his co-defendant as a payment or a tender of the purchase money of the property. On May 1st, 1886, one J. M. A. Miller deposited with William F. Forward, Clerk of the Circuit Court, $194. The terms and conditions of this deposit are shown by the following receipt:

$194.00          PALATKA, FLA., May 1st, 1886.

Received from J. M. A. Miller the sum of one hundred and ninety-four and 00–100 dollars, paid to me in escrow on the chancery side of the court in the case of Asia against the Hisers. The said amount is paid to me with the express condition that if said suit is decided in favor of Asia, the said sum is to be subject to

the order of court, otherwise to be returned to the said J. M. A. Miller or his order.

WM. F. FORWARD,<br>Clerk Circuit Court.

This receipt was endorsed as follows: In consideration of the sum of money herein specified I hereby assign and transfer to Sim Asia all claim I have to the amount specified in this receipt.

Apr. 28th, 1887.                    J. M. A. MILLER.

The money deposited with the clerk seems to have been kept by him, but it does not appear from the record what became of that deposited in the bank.

The defendants on April 22d, 1885, brought an action of unlawful detainer, and on May 7th, 1885, brought a suit in ejectment, to recover the land in dispute. The record does not show the result of the unlawful detainer suit. In the ejectment suit the verdict and judgment were for the plaintiffs in two successive trials of the issues. An appeal was taken from the judgment rendered in the first trial, and the same was reversed by this court, causing the second trial. This reversal was upon questions not affecting the real merits of the controversy. The last trial was had and verdict rendered November 15th, 1886, and judgment entered as of that date. The complainant, who was defendant in said judgments, gave notice of an appeal therefrom, but such appeal was never perfected. The plaintiffs in such judgment sued out a writ of possession thereon and were put into possession of the land June 15th, 1887.

Upon some of the material points of the case there was considerable conflict in the testimony. But the court below evidently took the view of the case above set forth, and it can not be said that there is not suffi-

cient evidence in the case fully justifying such view. A finding on the facts in the case as we have stated them could not be set aside as against the weight of the evidence.

The complainant claimed that the deposits in the First National Bank of Palatka and with the Clerk of the Clerk of the Circuit Court were good and valid tenders, and that he had fully paid for the land. He states in his bill of complaint that "if it be found upon calculation or investigation that any part of the purchase money remains unpaid, your orator hereby offers and tenders the payment of the same." No money was, however, tendered with the bill of complaint.

The only error alleged in the petition of appeal is that upon the case as presented the decree should have been in favor of the plaintiff, granting specific performance as prayed for in the bill of complaint.

*Isaac L. Purcell*, for Appellant.

No Appearance for Appellee.

LIDDON, J.:

The specific performance of a contract for the sale lands is not a matter of right in either party; but the right to such performance rests in the sound reasonable discretion of a court of equity. While equity does not regard time as of the essence of such contract unless it is so expressly stipulated, yet it will require of one who seeks the specific performance of such an agreement that he shall not be guilty of unreasonable delay. While time may not be of the essence of the contract, the principle is well established that where one party to a contract is guilty of

laches and negligence to perform the same. the other party may by giving notice fix a reasonable time for the performance of the contract, and has the right to treat the contract as abandoned, if not complied with in such limited time. Knox vs. Spratt, 23 Fla. 64, 6 South. Rep. 924; Chabot vs. Winter Park Co., 34 Fla. 258, 15 South. Rep. 756; Tate vs. Pensacola, G. L. & D. Co., 37 Fla. 439, 20 South. Rep. ——. Stating the last proposition a little differently: Although time may not be of the essence of the original contract, it may subsequently be made so by an express notice given by a party who is not in default to the other party who is in default, requiring the contract to be performed or rescinded within a stated time, which must be a reasonable time according to the circumstances of the case. 2 Warvelle on Vendors, p. 848; King vs. Ruckman, 20 N. J. Eq. 316; Pomeroy on Specific Performance, sec. 395. The notice required by the rule stated above need not necessarily be in writing. In such cases a verbal notice has been held sufficient. Nokes vs. Lord Kilmorey, 1 De Gex & Sm. 444, text, 458; Pomeroy on Specific Performance, sec 397; Fry on Specific Performance, sec. 729. The rule that time may be made of the essence of the contract has application not only to cases where a single payment in full is provided by the contract, but to cases of payment by installments, and the time of performance may be made material as to the payment of each and every successive installment. Steele vs. Biggs, 22 Ill. 643, text 654 and authorities there cited. A party seeking the aid of a court of equity must show that he has acted with promptness and diligence; while time is not of the essence of the transaction, and unreasonable delay in the assertion of his rights not satisfactorily accounted

for, will be considered in equity as an acquiescence in the refusal of the other party to the contract to convey, and as an abandonment of his equitable right. Knox vs. Spratt, 23 Fla. 64, 6 South. Rep. 924.

Testing the complainant's case by the application of the principles above stated to the facts thereof, it is clear that he was not entitled to the relief prayed for in his bill of complaint. It is by no means clear, according to the terms of the original agreement between the parties, that time was not of the essence of such contract. The fact that defendants gave a bond to execute a deed upon the payment by the complainant of the different installments of purchase money according to agreement did not of itself make time of the essence of the transaction. But the terms of this bond, taken in connection with the parol agreement and negotiations of the parties, or such negotiations and agreements without the bond, are probably sufficient to demonstrate that time was agreed upon by the parties as being essential. King vs. Ruckman, 20 N. J. Eq. 316, text 355. As the decision can be placed upon other grounds more satisfactory to the court, we will not definitely determine the question. While time perhaps may not have been of the essence of the original contract, it was clearly made so by the notice given by defendants and the agreement between the parties, at the time of granting the extension by the defendants for the payment of the installment of the principal of the purchase money which became due May 1st, 1882. The case, so far as notice after he was in default is concerned, is stronger against the complainant than is necessary under the principles of law applicable to such notice as above stated. Not only was the notice given him that the contract would be

rescinded if he failed to make the payments at the designated time provided for in the agreement for extension, but he actually agrees to such notice, and to a rescission of the contract if he failed to perform the same. He should have been held as acquiescing in the demand if he had remained absolutely silent, making no positive agreement in reference thereto. How much worse, then, is his situation when he positively agrees to comply with the notice. Where complainant has thus failed to perform his agreement, and the other party has not acquiesced in such failure, but has insisted upon his rights under the agreement, a court of equity, while reluctant to enforce a forfeiture, will not decree specific performance. Longworth vs. Taylor, 1 McLean, 395.

The complainant has also been guilty of such laches and negligence as should debar him of the remedy he seeks. He has not brought his suit within a reasonable time. There can be no general rule as to what constitutes a reasonable time for the bringing of such suits. Much depends upon the circumstances of each particular case. Chabot vs. Winter Park Co., *supra*. Taking the main facts of the case into a hurried consideration, the reluctance of the defendants to sell to the complainant because of their opinion as to his inability to comply with his contract, and their desire to sell him cheaper land which he could more reasonably be expected to pay for; the agreement that payments should be promptly made; his repeated failures to pay installments as they became due, after notice making the time of their payment an essential part of the contract; the urgent persistency of the complainant in purchasing the higher priced land; the absurd nature

6

of his supposed tenders of portions of the purchase money, and his long delay in making even this kind of tender; his failure to demand a deed; the delay in making any tender until suit for possession of the property was threatened against him; his failure, so far as the present record shows, to set up his equitable defense to the action of ejectment, or to seek any injunction of the same, although the same was pending over a year and a half, until more than three months after the second judgment in the case has been entered in favor of the defendants, constitute, in our opinion, such laches and negligence as precluded a decree of specific performance in his favor.

The decree of the Circuit Court is affirmed.