# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed August 31, 1908.

IDA KLEIN
VS.
MARGARET DOERING AND ANDREW DOERING.

*Martin Lehmayer* for plaintiff.
*Crain & Hershey* for defendants.

GORTER, J.—

The bill in this case was filed on February 26, 1907, by Ida Klein against Margaret Doering and Andrew Doering, her husband, to specifically enforce a contract for the sale of leasehold property, known as Nos. 122 and 124 S. Stockton street, in the City of Baltimore, which belonged to Margaret Doering.

It seems that on November 30, 1906, the defendant, Andrew Doering, wrote a postal card to Morris Klein, the husband of the plaintiff, saying: "I have had a talk with my wife about the matter of the house on Stockton street. If you wish to do business, call and see me."

On the next day Morris Klein called upon the defendants, and the following agreement, which is now sought to be specifically enforced, was entered into:

"Baltimore, Dec. 1st, 1906.

"This agreement, made this 1st day of December, 1906, by and between Magurite Doering, the party of the first part, and I. Klein, the party of the second part. Witnesseth, that the said party of the first part does hereby sell unto the party of the second part the following described property, known as 122 and 124 S. Stockton St., now occupied as a saloon and dwelling, subject to an annual ground rent of $54, at and for the price of ($1,200) twelve hundred dollars, of which ($20) twenty dollars has been paid prior to the signing hereof, and the balance to be paid of $1,180.00 in cash on the day of settlement to be made as soon as satisfactory title can be executed, all expenses to be adjusted on the day of settlement.

"Witness our hands in duplicate.

                her
"MARGURITE  X  DOERING,  (Seal)
               mark
"ANDREW DOERING,     (Seal)
"I. KLEIN,             (Seal)
"Witness: MRS. E. KUHL."

So far as the evidence discloses neither the plaintiff nor her husband took any steps during the month of December to acquire the property, they neither tendered the balance of the purchase money, or notified the defendants that they were ready to take the property.

On December 31, 1906, Andrew Doering, the husband of Margurite Doering, acting on behalf of his wife, sent to Morris Klein, the husband of the plaintiff, who had in the whole transaction represented her, the following letter:

"Baltimore, December 31, 1906.
"MR. M. KLEIN,
"1443 Eastern Ave., City.
"Dear Sir:

"As long as I have not heard about the settlement of the property under the agreement if the same is not settled before January 7th, 1907, I will have to call the deal off.

"Very respectfully yours,
"ANDREW DOERING,
"2203 W. Baltimore St.,
                   "City."

This letter was duly received by Morris Klein, neither he nor his wife seems to have paid any regard thereto, they did not either tender the purchase money before January 7, 1907, nor express the intention of taking the property. Nothing was heard from them until February 18, 1907, one month and eleven days after the expiration of the time fixed by the letter of December 31, 1906, for completing the sale.

Under this state of facts, in view of the other circumstances of this case, which will be hereafter adverted to, is the plaintiff entitled to the relief of specific performance? I am of the opinion the agreement has all the requisites of a binding contract; that the defen-

dants made a valid contract with the plaintiff; that the facts as testified to by the defendants' witnesses were sufficient to give notice to them; that Morris Klein was executing the contract for some one other than himself. The fact that they did not take the trouble to inquire or investigate as to the identity of the principal for whom Morris Klein was acting ought not to release them from their obligations under the contract. Even if there were doubt upon this question, the letter of December 31, 1906, to my mind fully ratified the contract upon the part of the defendants.

I am also of the opinion that when the defendant ratified the contract upon being told thereof by her husband, the same became binding. Not only have we her testimony as to her ratification, but her knowledge of the attempt to resell the property, by her husband, would amount to an implied ratification, even though the same had not been expressly given.

Nor does there seem to be any question but that the contract complied with the requirements of the Statute of Frauds.

I think, however, that the plaintiff is too late in her application for relief in this case. It is true that ordinarily time is not in equity considered the essence of a contract, and a court of equity will frequently specifically enforce an agreement for the sale of land after the time fixed by the contract has expired. But time may be made the essence of the contract, and this either at the time of its execution, or afterwards, by notice to perform within a reasonable time. A clear and succinct statement of the law may be found in Vol. 26, of the Am. and Eng. Ev. of Law, p. 74, where it is said:

"No general rule can be stated by which it can be determined, in each instance, whether or not time is the essence of the contract. Time may be made the essence, by express stipulation or necessary implication, *or by subsequent notice insisting that the contract be completed within a reasonable time specified in the notice.*" The text refers to the cases of Asia vs. Hiser, 38 Florida 71; Havens vs. Peterson, 43 N. Y. 218, and Ditto vs. Harding, 73 Ill. 117, in support of the doctrine of subsequent notice. In the case of Pegg vs. Wisden, 16 Beav. 244, the court

said: "I concur, also, in the decisions that where time is not originally the essence of the contract, it may, in the case of improper delay, be made so by notice."

So, also, in Parkin vs. Thorald in the same report, page 75, it is said: "Express notice will make time the essence of the contract where a reasonable time is specified." In the case of Macbryde vs. Werkes, 22 Beav. 533, A agreed to grant a lease to B. After considerable delay on the part of B, A gave notice that unless B completed within a month, he, A, would rescind the contract. A rescinded the contract, B filed bill, which was dismissed with costs.

In the same report, in the case of Nott vs. Riccard, at page 307, it is said: "Where there is an undue delay on the part of the vendor in making out his title, the purchaser, on reasonable notice, may put an end to the contract." The facts of that case were these: The plaintiff, on the 28th of March, 1855, agreed to sell some property to the defendant, the purchase to be completed on the 22nd of June. By the terms the vendors were bound to furnish declarations as to seisin free of incumbrances. The vendors furnished an insufficient declaration, and on May 30th refused to furish others. On July 23rd purchaser gave notice that unless the requisite declaration was furnished within a fortnight he would rescind the contract; and default being made by the vendors, he did so on August 10th. Held, the purchaser was justified in putting an end to the contract, and the bill was dismissed with costs.

Pomeroy on Specific Performance, Section 395, under the heading, "Time made essential by a subsequent notice of one of the parties." Many cases, both in England and this country, are referred to.

Now as to the case under consideration. It is plain from the terms of the contract that the sale was to be consummated as soon as the title could be examined. The language used is "Settlement to be made as soon as satisfactory title can be executed, all expenses to be adjusted to day of sale." This clearly meant that the sale which was to be for cash was to be consummated as soon as the plaintiffs could have the title examined. Two weeks would have been reasonable time for

this purpose, certainly 30 days would have been most ample. Therefore, after full time had been given to the plaintiff to ascertain the validity of the title, and to have paid for the property, the husband of the defendant wrote the letter of December 31, 1906, giving the plaintiff one week longer to comply with the terms of the sale and notifying her through her agent, that he would call the deal off, if the matter was not settled within the time. I think this was reasonable notice, the plaintiff would have had plenty of time, even if she had not started to examine the title, to have had it finished before the 7th of January, and when she failed to comply with this notice, by entirely disregarding it, the defendant was justified in rescinding the contract, it is proved by the husband of the plaintiff that she had no money of her own, or what amounts to the same thing, when he was asked what money she had with which to buy the property, he said she could borrow it from her father. It is, therefore, plain that while there was mutuality of obligation, there was not mutuality of responsibility, and if the plaintiff had refused to pay for the property the defendant could not have compelled her to do so. It is also clear that within two days after the contract was signed the husband of the plaintiff was attempting to sell the property. The letters to Jenkins, and to the Brewery show this. She, therefore, had the defendants in the position that if she sold the property at an advance she could hold them, but if she did not succeed in so doing, their efforts to hold her would have been fruitless.

I say this because Lord Erskine said in 13 Ves. p. 225, "It would be dangerous to let parties lie by with a view to see whether a contract will be a gaining or losing contract, and to claim a specific performance, which is a matter of discretion."

To the like effect is Pomeroy on Specific Performance, Section 407. Where a vendee delays in completing the contract in order that he may speculate upon the chances of its proving to be an advantageous bargain or that through a rise in value or other change of circumstances his gain may be assured, and then when he is thus certain that it will be a fortunate speculation offers to perform and sues out to compel a conveyance by the vendor, a

Court of Equity will refuse to grant him the remedy, even although he may have at an earlier day paid part of the purchase money.

I am, therefore, of the opinion that the plaintiff is not entitled to the relief prayed, and I will sign a decree dismissing the bill with costs.